**TEXAS & P. RY. CO. v. SMITH.**

No. 1777.

Court of Civil Appeals of Texas.   Eastland.

April 8, 1938.

Rehearing Denied May 6, 1938.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellant.

Scarborough & Ely and Walter Ely, all of Abilene, for appellee.

LESLIE, Chief Justice.

The plaintiff, Eula Jane Smith, instituted this suit against the defendant to recover damages for injuries alleged to have been inflicted on her by reason of the defendant's employees forcibly and negligently removing her from the toilet of the defendant's train while she was a lawful passenger thereon. As the result of the treatment thus received she alleges that she sustained various serious and permanent injuries, suffered a miscarriage, etc.

The defendant answered by general demurrer, general denial, and plea of contributory negligence. It was the pleading and proof of the defendant that the plaintiff was attempting to throw herself from the moving train out of the window of the restroom and that it was necessary for the employees to break into that room and prevent her from accomplishing such purpose; that in doing so they used no more force than necessary under the circumstances. The case was submitted to a jury upon the following special issues and the answer to each issue is given:

"1. Do you find from a preponderance of the evidence that the defendant's brakeman forcibly ejected the plaintiff Eula Jane Smith from the toilet on the occasion in question? Answer yes or no. Answer: Yes.

"If you have answered the foregoing special issue No. 1 'Yes' and in that event only, then you will answer

"2. Do you find from a preponderance of the evidence that the defendant's brakeman was negligent in forcibly ejecting, if he did, the plaintiff from said toilet? Answer yes or no. Answer: Yes.

"If you have answered questions Nos. 1 and 2 'Yes' and in that event only, then you will answer

"3. Do you find from a preponderance of the evidence that the plaintiff sustained personal injuries as a result of being forcibly ejected, if she was, from said toilet? Answer yes or no. Answer: Yes.

"If you have answered Questions Nos. 1, 2 and 3 'yes' and only in that event, then you will answer

"4. Do you find from a preponderance of the evidence that the negligence, if any, inquired about in special issue No. 2, was a direct and proximate cause of plaintiff's injuries, if any? Answer yes or No. Answer: Yes.

"5. Do you find from a preponderance of the evidence that the defendant's employees in charge of the train had reasonable grounds to believe that the plaintiff was in such mental condition while traveling on defendant's train that it was necessary for them to restrain plaintiff to prevent her from jumping off the train? Answer yes or no. Answer: Yes.

"6. Do you find from a preponderance of the evidence that the defendant's employees used only such force in removing plaintiff from the toilet to her seat in the car as was reasonable and necessary, under the circumstances, for the protection of plaintiff? Answer yes or no. Answer: No.

**1240**

"7. Was the plaintiff guilty of negligence in the way and manner she acted in and after getting on the train? Answer yes or no. Answer: No.

"8. Did such negligence, if any, on the part of the plaintiff, proximately contribute to her injuries, if any? Answer yes or no. Answer: No.

"9. What amount of money, do you find from a preponderance of the evidence, if paid now in cash, would reasonably compensate the plaintiff for her injuries, if any, sustained as a direct and proximate result of the defendant's negligence, if any? Answer: $1,200."

The court entered a judgment accordingly. The defendant appeals. All assignments of error are addressed to the ruling of the trial court in overruling the motion for a new trial.

Appellant's first assignment is that the court erred in refusing to direct a verdict in its behalf. An inspection of the record discloses that there was evidence to carry the case to the jury and sufficient to support the verdict. For this reason we also overrule the contention that the verdict and judgment is against the great weight and preponderance of the evidence.

The second and third assignments of error relating to the same matter will be considered together. The first raises the point that the jury having found in answer to issue No. 5 that the defendant's employees had "reasonable grounds" to believe plaintiff was in such mental condition while traveling on the train "that it was necessary for them to restrain plaintiff to prevent her from jumping off the train," and since there is no finding on "damages or injury" to plaintiff by reason of "any extra force exerted on the plaintiff to restrain her from jumping off the train, that the jury may have found plaintiff was injured by reason of being forcibly restrained from jumping from the train, although such restraint was necessary" and "there is no way to determine by the verdict * * whether the jury found the extra force exerted * * * in any way injured plaintiff."

Stated somewhat differently in assignment No. 3, the contention is made that in submitting issue No. 9 the trial court called for a finding of damages by reason of being ejected from the toilet but did not *"limit same to the unnecessary force*

used in ejecting her * * * and that it is impossible `for the court to determine as to the amount of damages found by the jury by reason of the unnecessary force and the judgment as entered for $1200, includes damages for forcibly ejecting plaintiff from the toilet whether the injury was caused by unnecessary force or necessary force." (Italics ours.)

The verdict in response to issues 1, 2, 3, and 4 fixed the liability of the defendant as for negligence, unless the effect of such finding was nullified by the jury's answer to issue No. 5, wherein it was found "defendant's employees in charge of the train had reasonable grounds to believe that the plaintiff was in such mental condition while traveling on defendant's train that it was necessary for them to restrain plaintiff to prevent her from jumping off the train."

The fact that the employees may have had "reasonable grounds" to entertain such belief concerning the plaintiff's mental condition "while traveling on the train" would not warrant the employees in being "negligent in forcibly ejecting the plantiff from the toilet"—which fact is made the basis of the negligence complained of. Both facts, the one of "reasonable grounds" for apprehension, etc., and the other of "negligent conduct," could exist at the same time, but the former would not justify or excuse the latter. Besides, the jury in response to issue No. 7 found that the plaintiff was not guilty of negligence in the "way and manner she acted in and after getting on the train," and further in response to issue 6 that the defendant's employees "in' removing her from the toilet to her seat," did not use "only such force * * * as was reasonable and necessary under the circumstances for the protection of the plaintiff." If the answer to issue No. 7 be correct, obviously there was nothing in the plaintiff's conduct to give rise to the fears and apprehension entertained by the employees for this passenger's safety.

It is not believed that the concern of the defendant's employees, however natural, for the plaintiff, nor the reasons therefor, would afford the appellant a defense against the charge of negligence. The appellant cites no authorities in support of the contentions now being considered, and we have found none that would seem to have a more direct bearing upon the merits of the question than that of Texas & P. Ry. Co. v. Graves, 2 Posey, Unrep. Cas. p. 306, cited in appellee's

brief. In that case, as here, the appellee was rightfully upon the train as a passenger, and the conductor in charge of the train committed assault upon and severely wounded him. The opinion of the court stating the facts essential to an understanding of the same is as follows:

"As to the immediate transaction there is a contrariety of evidence. Three persons had been pointed out to the conductor as suspicious persons by a watchman at the depot, who informed the conductor that it was thought that they were following a gentleman then on the train, with a view of robbing him. The conductor thought appellee was one of the three men pointed out to him as suspicious persons, and was engaged in watching him and two others to prevent them robbing the passengers. Held, it may be assumed that the conductor was mistaken in the men pointed out and was laboring under a misapprehension as to appellee's intentions and the purport of his act, yet such mistake would not excuse the company nor exempt it from liability for the actual damage resulting to appellee from the wrongful acts of the conductor, which would include all damages resulting as a natural consequence from the wrong, including mental and physical suffering. Two thousand dollars actual damages is held not to be excessive, and as the exemplary damages have been remitted, the judgment is reversed and here rendered for same amount."

This would seem to fit the facts of the instant case. The principle of law there applied would appear to render the finding of the jury in response to issue No. 5 above immaterial.

Further and in response to assignments 2 and 3 it will be observed that the trial court in presenting the issue of damages propounded the question thus: "What amount of money do you find from a preponderance of the evidence if paid now in cash would reasonably compensate the plaintiff for her injuries, if any, *sustained as a direct and proximate result of the defendant's negligence*." (Italics ours.) The italicized words constitute definite limitation of damages to injuries flowing from the alleged negligence. Further, the appellant made no objections to the manner and form of the issue (No. 9) submitting damages, nor did it request the submission of an issue thereon more accurate in such respects. Therefore, on the record the objections, if meritorious, were waived. Lloyds America v. Payne, Tex.Civ.App., 85 S.W.2d 794; Article 2185, R.S.1925, and numerous authorities in notes.

This brings us to a series of assignments of error which proceed upon the theory that the court erred in failing on his own motion to instruct the jury to disregard and consider for no purpose different portions of the argument made by appellee's counsel to the jury. Each point was first made in the motion for a new trial. The first part objected to as inflammatory, outside the record, etc., is as follows:

"John [appellant's attorney] says that he don't know whether she was married—just a last futile effort to try to confuse you and get your mind off of this actual occurrence, that's all,—Here is your marriage certificate; if you want to introduce it, you can.

"Mr. Alvis: Your Honor, we object to that statement because it is not a marriage license.

"Mr. Ely: It is a marriage certificate, showing—

"The Court: Gentlemen, you will not consider any statement about what he has in his hand, because it is not introduced.

"Mr. Ely: You promised us, I thought. In the first place, she tried to commit suicide, and in the second place, John says she is not married. What is the matter with you, John? Have you been imbued with the very sense of indecency that the different men on the railroad were possessed of, that tried to throw her out of the toilet? And you say she is not married. You don't know whether she is or not. You ought not to do it. You know you should not. That is just one of those things they have got to pitch this lawsuit on. That's all."

The bill of exception preserving the point was qualified as follows by the trial court: "Just before the closing of the testimony, counsel for the defendant stood up in the presence of the jury and asked for the marriage certificate. Counsel for plaintiff promised to get it for him. After the evidence had closed, plaintiff went to get the marriage certificate and did get it and brought it back, and during the argument counsel for the defendant, Mr. John Alvis, had said '* * * she says she married him on the 25th of March, 1935. I don't know. We have got her word for it.' Plaintiff brought back the marriage certificate, and in the argument Walter Ely referred to that and said that they had it and now wanted to introduce it. Whereupon Mr. Alvis objected to the statement made by counsel

on the ground that it was not a marriage license. Thereupon the court instructed the jury not to consider the statement. The counsel for the plaintiff offered to introduce the certificate in evidence and the defendant objected and the court sustained the objection. Counsel then made the statement complained of and there was no further exception taken at the time."

The plaintiff was suing as a married woman, alleging she had been "permanently abandoned by her husband." She had so testified and no direct testimony to the contrary was introduced. Under the circumstances reflected by the record and especially the qualification to the bill, the appellee's counsel made a futile effort to introduce at that stage of the trial and during the argument the marriage certificate. In this there was no error. Such procedure is authorized by the statute. Article 2181, R. S.1925; Pridgen v. Hill, 12 Tex. 374; Texas Co v. Ramsower, Tex.Com.App., 7 S.W.2d 872, 877. The introduction of testimony at such stage of the trial is very much in the discretion of the trial court.

The court instructed the jury not to consider the statement relating to the marriage certificate. If calling attention to the same was error, it it believed the instruction rendered it immaterial or removed its prejudicial effect on the jury.

We gather from the bill and the court's explanation that the attorney for appellant near the close of the testimony first asked for the marriage license, thereby giving rise to the implication that the marital status of the plaintiff was questioned under the general facts of the case. In attempting to introduce the marriage license, attorney for appellee was doubtless trying to parry the effect of such implication in view of the fact that a miscarriage had followed soon after the plaintiff reached Abilene. There was positive testimony that the defendant's agents had invaded the privacy of the lavatory. If the facts and circumstances did not warrant such conduct as plaintiff had testified, then the situation presented was one warranting the use of rather strong language, and upon the record presented this court feels disposed to uphold the ruling of the trial court which had a better opportunity to understand the true situation presented at that stage of the trial. Giving proper effect to the qualification to the accepted bill, this assignment is overruled.

Further, in presenting these assignments the contention is made that the argument produced a "punitive and excessive verdict." There is, however, no assignment to that effect.

The fifth assignment is directed to the following argument of counsel for appellee: "Gentlemen: I think you can look a long time but I don't believe you will find a lawsuit or find a situation outside of the courthouse presenting a more aggravated condition of an assault and battery than you have heard presented to you by the evidence in this case."

This argument is challenged as being outside the record, inflammatory, calculated to prejudice the rights of the losing party, and amounting to unsworn testimony by the attorney. The court qualified this bill as follows: "This argument was not objected to by counsel for defendant at the time. Defendant's counsel argued that the plaintiff was insane, mentally irresponsible, was trying to commit suicide, and that the only thing that the employee of the railroad company was trying to do was to protect her; although the evidence on the part of the plaintiff was that she had been kicked in the stomach and severely injured and that the conduct of the brakeman was intentionally done."

In the light of the record we believe the attorney was merely making inferences and deductions from the testimony before the jury. This he had a right to do. The jury could have understood nothing else from this argument. It is not to be classified as unsworn testimony. Commercial Standard Ins. Co. v. Shudde, Tex.Civ.App., 76 S.W.2d 561, 566; Corn v. Crosby County Cattle Co., Tex.Com.App., 25 S.W.2d 290; Jackson v. Jackson, Tex.Civ.App., 35 S.W.2d 830, 834; 41 Tex.Jur. 813, § 84. For these reasons and by virtue of the accepted qualifications attached to the bill, no reversible error is here shown.

The sixth assignment is predicated upon the following excerpt from said argument: "Bob is pretty smart. So is the fellow that has been helping him here in this—the fellow that they got out here from Dallas to represent the corporation in this case, the claim agent. They are pretty smart, and they are kind of worried, too. Do you know why? Maybe the case would not give them much concern in Dallas, but they are worried because they know that out here, men that sit on juries still think a little bit of chivalry and a

little bit of decency. They are still capable of getting outraged when their women folks are insulted. That's why they are worried."

The contention is that the argument was outside the record, inflammatory, injected prejudicial matter into the record, and made improper appeal to the jury. This bill was also qualified by the trial court as follows: "The testimony in the trial of the case disclosed that Mr. Lewis, the claim agent for the defendant, sometime before the suit was filed took a stenographer to the home of the plaintiff and secured a statement from her, and, upon the trial of the case, sat with the attorneys for the defendant throughout the trial. It was argued by the attorneys for the defendant, the railroad company, that the brakeman did no more than what he should have done. The record showed without objection that she was penniless and was on relief, and this too was discussed by the defendant's attorneys; and the records showed that the brakeman was from Pennsylvania. It was contended by the defendant that it was all right and proper for the brakeman to break in on the privacy of this woman. The defendant contended that it was trying to look after the plaintiff, and this argument was made in reply to the argument made by the defendant's counsel. There was no objection made at the time."

It will be observed that this qualification of the bill is very comprehensive, substantially covering the trial as a whole, although directed particularly to the argument under consideration. Following the sentence referring to the brakeman "breaking in on the privacy of this woman," the trial court concluded the qualification with a very significant statement, " * * * this argument (that objected to) was made in reply to the argument made by the defendant's counsel." So qualifying the bill, the trial court evidently had in mind the rule of law stated in 41 Tex.Jur. p. 813, § 84, as follows: " * * * counsel is permitted to denounce acts shown by the evidence or fairly deducible from the facts in evidence, and in so doing may apply harsh words and epithets."

Courts cannot strip the litigation of human elements reflected by facts warranting the indulgence in the use of such language.

In any event, however, the argument was evidently provoked, or in reply to that of the opposing counsel, and the assignment for this reason should be overruled upon the authority of such cases as Casualty Reciprocal Exchange v. Stephens, Tex. Com.App., 45 S.W.2d 143, 148(15); Lowrimore v. Sanders, Tex.Com.App., 103 S.W.2d 739; Traders & General Ins. Co. v. Ross, Tex.Civ.App., 88 S.W.2d 543; 41 Tex.Jur. § 75, p. 798.

The seventh assignment complains of the following argument of said counsel: "This woman has been subjected to a horrible indignity. Maybe she is insane—Maybe she is—I don't know—but, at the same time, she still retains a woman's sense of shame, and for that brakeman to come into that door and enter there * * * is the rankest indignity that I ever heard of, or that you ever heard of, perpetrated by an individual or a corporation."

This was challenged for practically all the reasons above stated. The trial court approved the bill in this instance as follows: "Argument was made in reply to argument made by counsel for defendant wherein it was argued by defendant's counsel that plaintiff was insane and insisted that she was trying to commit suicide, and that the brakeman was doing his duty. Defendant contended that it was not an indignity but an act that was necessary."

No objections were made to the argument at the time. It was evidently invited by the remarks of the opposing counsel. As the point is presented, carrying the qualifications noted, no reversible error is shown. See discussion of the fifth assignment of error.

The eighth assignment is an attack upon another portion of the plaintiff's attorney's argument, namely: " * * * You know that there are a lot of people in the world that get mighty uppish and think they are a whole lot better than some person of lowly origin or lowly birth. Now Red Pool, the deputy sheriff with the big boots on, and his big buxom wife, they look down on her. Do you know why? Because she was poor and friendless; one of the world's unfortunates. She is just as much a human being—she is Mrs. Smith—but low down to them. They put her on the train; they got the relief office to buy a ticket with federal money, and they gave her a quarter to come down to Abilene. They didn't want her at Sweetwater; they wanted to ship her down here to Abilene."

The bill of exception preserving this point carries the following qualification: "The Deputy Sheriff, Red Pool, was the jailer and he took charge of her when she was brought to the jail. He put her in a

cell with a prostitute and a bootlegger, although she was charged with no crime. They then bought her a ticket to Abilene out of relief funds, gave her twenty-five cents, and put her on the train by force. It is very evident from Pool's and his wife's testimony that they did look down on her and had no respect for her. These were witnesses of the defendant and the court was of the opinion counsel for plaintiff had a right to discuss their testimony, and besides, there was no objection made at the time."

This argument was also attacked as being outside the record, inflammatory, and calculated to prejudice the rights of the losing party. It is presented as reversible error for the appellee's attorney to refer to his client as of "lowly origin" or "lowly birth," etc.

Under the court's explanations and in view of the fact that no objection was made at the time to the argument, we conclude that it was legitimate under the facts and circumstances of the case.

██ The ninth assignment is directed to that portion of the argument of the appellee's counsel, reading as follows: " * * That may be true, but that isn't any reason why the poor and unfortunate in this land should not have the same protection as those in fine and better circumstances like Mr. Alvis and Mr. Wagstaff and these railroad men."

This assignment is supported by same proposition as the eighth. It is briefed by appellant in connection with assignment No. 8. The court qualified the bill as follows: "Counsel for plaintiff in opening the argument called the jury's attention to the fact that the officers at Sweetwater had put the plaintiff in jail because she asked for a night's lodging. The fact was discussed that the defendant had accused her of being mentally irresponsible, and in the course of the argument the statement was made and set out in this bill. *There was no objection*

made to the argument at the time it was made and was only dealing with the record that was actually made on the trial of the case. The railroad company contended that she was just an object of charity and they were carrying her from Sweetwater to Abilene; that she was mentally irresponsible, and under no theory of the case was she entitled to compensation for any injury she might have sustained." (Italics ours.)

It will be observed that the trial court in the general qualification stated that the argument was "only dealing with the record as was actually made on the trial of the case." If the record as made in testimony or argument of opposing counsel made this argument appropriate, there is no ground upon which the assignment can be regarded as presenting a reversible error and it is overruled.

Assignments of error 6 and 10 are based upon bill of exception No. 3. The tenth assignment, in effect, presents in substance the same contentions heretofore considered under other assignments. It is contended that the argument indulged in by counsel for appellee was outside the record, inflammatory, prejudicial to the rights of the losing party, an undue appeal to the sympathy of the jury, that it was error to refer to the plaintiff as penniless or on relief, and other reasons of a similar nature. For the same reasons assigned for overruling assignment of error No. 6, assignment of error No. 10 is overruled. In doing so, we but give the natural and proper effect to the court's qualification to that bill as the same has been hereinbefore discussed.

We have given the appellant's assignments careful consideration. In matters of alleged improper argument due regard for the record as reflected by the learned trial judge's explanations and qualifications to the bills of exceptions requires that assignments relating to such argument be overruled. For the reasons assigned, the judgment of the trial court is affirmed. It is so ordered.