## SOUTHERN UNDERWRITERS v. HODGES.

### No. 2236.

Court of Civil Appeals of Texas. Waco.

May 16, 1940.

Rehearing Denied June 20, 1940.

Will R. Saunders, Henry D. Akin, and W. E. Johnson, all of Dallas, for plaintiff in error.

Bailey & Shaeffer and George McHam, all of Dallas, for defendant in error.

TIREY, Justice.

This is a workmen's compensation case. H. B. Hodges, an employee of B. F. Walker, was killed as the result of an automobile accident in Andrews county, Texas, while returning from Odessa, Texas, to Hobbs, New Mexico. Mrs. H. B. Hodges, the putative wife of the deceased, and Mrs. Laura M. Hodges, mother of the deceased, each filed notice with the Industrial Accident Board of Texas for compensation. The Industrial Accident Board made an award in favor of Mrs. H. B. Hodges. The Southern Underwriters, the compensation carrier, perfected an appeal by filing suit in the district court of Andrews county. The Industrial Accident Board denied the claim of the mother, Mrs. Laura M. Hodges, and she likewise perfected an appeal by filing suit against the Southern Underwriters in the district court of Andrews county. The suits in Andrews county were transferred by agreement to the district court of Ellis county, where the same were consolidated under one number and style. On the trial in the district court of Ellis county, the court instructed the jury to return a verdict against Mrs. H. B. Hodges, the putative wife, in favor of Mrs. Laura M. Hodges, the mother of the deceased, and in favor of the Southern Underwriters as to the said Mrs. H. B. Hodges. On motion of the Southern Underwriters, its cause of action was non-suited and dismissed without prejudice to the cross-action of Mrs. H. B. Hodges and Mrs. Laura M. Hodges. On the verdict of the jury, judgment was entered in favor of Mrs. Laura M. Hodges against the Southern Underwriters for 360 weeks' compensation, at $20 per week. Judgment was further rendered that Mrs. H. B. Hodges recover

nothing against Mrs. Laura M. Hodges and the Southern Underwriters. The Southern Underwriters, plaintiff in error, has perfected this appeal against Mrs. Laura M. Hodges, defendant in error.

Owing to the fact that the major question at issue in this appeal is whether H. B. Hodges, at the time he was injured, occupied the status of a Texas employee of B. F. Walker, we deem it vital to make a comprehensive statement of the facts in this case. The case was tried before a jury partly upon an agreed statement of facts and partly upon testimony adduced. It appears from the stipulation that (1) B. F. Walker, the employer, is a trucking contractor, his business being confined to the various oil fields in Oklahoma, Texas, New Mexico, and Louisiana; (2) that he utilizes a large number of trucks and other oil field equipment in his business and employs a large number of men; (3) that in 1929 he employed H. B. Hodges as a mechanic and driver for work in the state of Oklahoma; (4) that Hodges remained in Walker's employment in Oklahoma until some time prior to 1933, when the Oklahoma work was finished, and Walker brought Hodges with him to Houston, Texas, where Hodges continued to work as an employee as mechanic and driver; (5) that in the latter part of 1933, Walker moved Hodges to Odessa in Ector county, where a new oil field was located, and where Walker established headquarters for Hodges in Odessa and placed him in charge of the operations there as truck pusher; (6) that Walker's trucks in that area were equipped with both Texas and New Mexico licenses and the car furnished by Walker to Hodges for his use was likewise equipped with both Texas and New Mexico licenses; (7) that Hodges remained at Odessa for a period of 7 or 8 months, and when the business slowed up at Odessa and the oil development became more active in and near the town of Hobbs, New Mexico, Walker moved Hodges from Odessa, Texas, to Hobbs, New Mexico; (8) that Hodges' salary was increased when he moved from Odessa to New Mexico; (9) that Hodges established his residence at Hobbs, New Mexico, received his mail there and continued his residence there until the time of his death in July 1936; (10) that the records of the New Mexico operations were kept separate and apart from the Texas operations, and that the employees in New Mexico were listed separately from the Texas employees; (11) that B. F. Walker carried a policy of workmen's compensation insurance under the New Mexico law with the Maryland Casualty Company, and that H. B. Hodges was reported and carried with the Maryland Casualty Company on the payroll reports in the Walker office at Hobbs, New Mexico; (12) that B. F. Walker carried compensation insurance in Texas, but that B. F. Walker never at any time reported to the Southern Underwriters, the Texas carrier, that H. B. Hodges was an employee, and no premiums were paid to the Southern Underwriters on the wages being earned by Hodges at and for more than a year prior to the time of his death in July 1936; (13) that while H. B. Hodges was so living and residing at Hobbs, New Mexico, in the employ of B. F. Walker, his duties required him to go into the state of Texas, across the state line, but such trips and visits into the state of Texas were not permanent in nature and character, and after the trips had been completed, Hodges would return to Hobbs; (14) that on the morning of the 28th day of July, 1936, Hodges left Hobbs in an automobile furnished to him by Walker for use in his master's business and licensed in the states of New Mexico and Texas, and went to the city of Odessa in Ector county, Texas, for the purpose of ordering material and supplies for his master, which he could not obtain in the state of New Mexico; (15) that while on the return trip to Hobbs from Odessa, and while in Andrews county, Texas, the car that Hobbs was driving collided with a truck and Hodges received injuries in such collision and a short time thereafter he died in a hospital in Ector County, Texas; (16) that for at least two and one-half years prior to the time of his death he was steadily employed in New Mexico and lost no appreciable time during that period, that at the time of his death Hodges was drawing a salary of $165 per month; and (17) that the foregoing stipulation was not to be construed as an agreed case but both plaintiff and defendant reserved the right to introduce testimony in addition thereto and the cause was to be determined by the trier of the facts in the light of the stipulation and the evidence adduced by the parties, the inferences from the stipulation to be considered in the light of the other evidence, if any, introduced by the parties. It further appears from the uncontroverted testimony that (a) while Hodges was at Odessa (maintaining his headquarters at a tourist camp), in charge of the operations

there, the trucks of B. F. Walker were operating in both Texas and New Mexico and Hodges was in charge of the same; (b) that when business slowed down at Odessa and the activity became greater near Hobbs, Walker caused a camp to be established at Hobbs and directed Hodges to remove his headquarters from Odessa, Texas, to the Walker camp at Hobbs, New Mexico; (c) that Hodges, after removing to Hobbs, was doing the same character of work that he was doing at Odessa, and that his work at Hobbs required him to make trips into Texas once or more a week, and that on some of these trips to Texas he would have to remain in Texas for as long as three days at a time; (d) that after Walker came to Texas he maintained his office in Houston, Texas; (e) that Hodges had charge of the payroll at Odessa and Hobbs and hired and fired the men and did the things that B. F. Walker would have done had he been present in furtherance of his master's business; that the Southern Underwriters, the compensation carrier, issued a Texas standard policy covering injury or death under the terms and conditions of the workmen's compensation employers' liability law; that Item 3 of the policy, as to the location of operations, among other things, provided: "Locations of all factories, shops, yards, buildings, premises or other work place of this subscriber, be town or city, with street and number Houston and elsewhere in Texas" and that defendant in error elected to claim compensation as a Texas employee.

The plaintiff in error's assignments Nos. 1 to 5, inclusive, attack the judgment of the trial court on the ground that the facts show, as a matter of law, that H. B. Hodges was not a Texas employee at the time he was injured, or that he did not occupy the status of a Texas employee of B. F. Walker, but on the contrary was an employee of B. F. Walker in the state of New Mexico, and that by reason thereof the policy of compensation insurance in Texas does not cover the injury.

 Under the authority of Southern Underwriters v. Gallagher, Tex.Sup., 136 S.W.2d 590, the test is, What was the status of H. B. Hodges at the time of the injury with regard to being a Texas employee? This record indisputably shows that H. B. Hodges was a Texas employee looking after the master's business at Odessa prior to the time that he went to the B. F. Walker camp at Hobbs, New Mexico.

We think it likewise indisputably shows that when H. B. Hodges changed his headquarters from Odessa to Hobbs, he continued to perform services for his master in both Texas and in New Mexico. In fact, the jury found in its verdict that H. B. Hodges spent twenty per cent of his time in Texas in the service of B. F. Walker after he, Hodges, moved to Hobbs, New Mexico. The evidence is ample to support said finding. In fact, the evidence indisputably shows that there was no interruption of the service that Hodges was rendering to his employer in Texas when he was moved from Odessa to the Walker camp at Hobbs. There is no question that Hodges occupied the status of a Texas employee before leaving the state. In as much as the evidence indisputably shows that H. B. Hodges continued to give a substantial portion of his time in Texas to the service of B. F. Walker, after he removed to Hobbs, and that there was no interruption or change in the service that he rendered to his master in Texas before removing to the Walker camp in New Mexico, we think that the evidence shows that Hodges was temporarily in Hobbs, N. M., and that he occupied the status of a Texas employee in so far as he continued to render service to his employer in Texas. Moreover, the trucks over which Hodges had supervision and control were licensed in both Texas and New Mexico and were being operated in both Texas and New Mexico, and in addition thereto, the car furnished by Walker to Hodges for his use in the furtherance of his master's business had both Texas and New Mexico licenses, and we are of the opinion that such facts, plus the fact that Hodges' duties required him to be in Texas as and when his master's business required him to be, show that it was contemplated that his services to his employer were to be rendered in both Texas and New Mexico, and that his status of a Texas employee was not severed by the fact that the camp where he resided was located and situated in Hobbs, New Mexico, or that a part of his services rendered to his employer was rendered in the state of New Mexico. Moreover, section 6 of the policy of insurance provided as follows: "This agreement shall apply to such injuries so sustained by reason of the business operations described in said Declarations which, for the purpose of this contract, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such opera-

tions are conducted at the work places defined and described in said Declarations or elsewhere in connection with, or in relations to, such work places." We therefore hold that the evidence shows that H. B. Hodges was a Texas employee because of the service he rendered to his employer in the state of Texas, and was rendering at the time he received his injuries, and that said H. B. Hodges was protected by our compensation law for the services he performed for his master in Texas. Our Supreme Court has uniformly held that our workmen's compensation law should be liberally construed in favor of Texas employees. Southern Underwriters v. Gallagher, 136 S.W.2d 590. We are in accord with that rule. See also Texas Employers Ins. Ass'n v. Robertson, Tex.Civ.App., 137 S.W.2d 836, writ dismissed, correct judg. Plaintiff in error's assignments on the above question are overruled.

■ Plaintiff in error's fourth proposition complains of the action of the trial court in refusing to instruct a verdict for it on the ground that the uncontroverted evidence, as well as the pleadings, shows that Laura M. Hodges, defendant in error, had waived all of her interest in the compensation claim in favor of Mrs. H. B. Hodges, and had assigned all of her interest to Mrs. H. B. Hodges. We have carefully considered this assignment, and, in our opinion, it is without merit.

■ Error is assigned to the action of the trial court in refusing to grant the motion of the Southern Underwriters to declare a mistrial and to discharge the jury on the ground that reversible error was committed by attorneys for defendant in error, to-wit: Geo. W. McHam, in reading to the jury the contents of paragraph 8 of the consolidated petition of said defendant in error, which pleading advised the jury that the Industrial Accident Board had made an award, and that the defendant in error, the Southern Underwriters, had perfected an appeal therefrom. It appears that, while counsel for defendant in error was reading the pleading to the jury on which this case proceeded to trial, when he reached that part of his petition which said: "And that on the 6th day of April, 1937, before it entered its final ruling and award," counsel, reading the pleading, then stated: "For jurisdictional purposes only," which statement was not in the pleading he was reading. At that point counsel for plaintiff in error called counsel's attention

to the fact that he was not reading the paragraph as written and asked him to read it as it was written. Counsel for defendant in error immediately replied, "I will read it as written if you desire," and thereupon he did read it as written, reading the entire pleading to the court and jury without any further interruption or objection being made. Immediately after counsel had finished reading the petition, plaintiff in error's counsel made a motion to the court to declare a mistrial and discharge the jury. The trial court overruled said motion, and, in qualifying the bill, among other things, said: "Whether he was calling upon him to read the whole pleading, or what object the attorney had in his mind, of course, was a matter of conjecture, and I think reasonably and fairly it could be construed as inviting it either way, the way the thing came up, and especially that the jury had no idea in the world but what the party was trying to put one by within the mind of any man." It is our opinion and we find that if the action of defendant in error's counsel in reading the entire pleading to the jury under the circumstances set forth in the record was error, such error was invited by plaintiff in error's counsel and he cannot complain of the action of the trial court. Each of the assignments attacking the action of the trial court on the motion to declare a mistrial and discharge the jury is therefore overruled.

■ Assignments 8 to 38, inclusive, complain of the court's refusal to pass on general demurrers and various special exceptions in defendant in error's amended pleading. We have carefully considered the order entered overruling same and the reasons therefor given by the trial court, and we are of the opinion that plaintiff in error has failed to show an abuse of discretion. Moreover, the pleading was not subject to a general demurrer and under the undisputed record of this case, the sole question was whether H. B. Hodges was a Texas employee within the meaning of our compensation statute at the time he received the injuries that resulted in his death. The trial court, having given peremptory instructions against the putative wife in favor of the compensation carrier and against the putative wife in favor of Mrs. Laura M. Hodges, many of the special exceptions became immaterial. Moreover, a large measure of discretion is lodged in the trial court in passing on the exceptions

to the pleadings, as well as to the time that he hears the same, and, in the absence of a showing of abuse of discretion or injury resulting from the ruling of the trial court, the ruling will not be disturbed. No injury is shown. Constitution Indemnity Co. of Philadelphia v. Armbrust, Tex.Civ.App., 25 S.W.2d 176, 180, pars. 9 and 10, writ refused; Golden v. Odiorne, 112 Tex. 544, 249 S.W. 822, 825, pars. 5 and 6; Rule 62a of the Courts of Civil Appeals. Each of the foregoing assignments is therefore overruled.

Assignments 41, 42, 43 and 44 complain of the action of the trial court in permitting defendant in error's attorneys to reopen the case and put on additional testimony and argue the same after the conclusion of all the evidence and after the case had been argued and the jury had retired. It appears from the record that this cause was submitted to the jury at about noon; that they went to the jury room, selected a foreman and then adjourned for lunch. In the meantime, a motion on behalf of defendant in error was submitted to the court for permission to be permitted to reopen the case and adduce testimony as to the amount of money earned by H. B. Hodges, deceased, in the year prior to his death. When court resumed, inquiry was made of the jury as to whether or not they had considered of their verdict and they had not done so. The court then permitted the defendant in error to reopen the case (over objection made by local counsel for plaintiff in error) and Mrs. H. B. Hodges, the putative wife, testified, in substance, that her husband was paid $165 per month at the time of his death and had been paid such monthly salary for something over a year prior to his death. After Mrs. Hodges had been interrogated by both counsel for defendant in error and local counsel for plaintiff in error, the court then submitted special issue No. 10, and ten minutes was allowed to each side for further argument. Special issue No. 10 reads as follows: "Do you find from a preponderance of the evidence that B. F. Walker paid H. B. Hodges a salary of $165.00 per month, for twelve months preceding his death?" To which the jury answered "Yes." Various exceptions were made to the action of the trial court in permitting the case to be reopened and evidence adduced. Article 2181 of our Revised Statutes of 1925 is controlling on this

question. Our courts have uniformly held that this statute is necessarily directory and a party complaining of its infraction must, in order to obtain a reversal of the judgment, show that he has been injured. Prescott-Phœnix Oil & Gas Co. v. Gilliland Oil Co., Tex.Civ.App., 241 S.W. 775; Texas & Pac. Ry. v. Smith, Tex.Civ.App., 115 S. W.2d 1238, points 4 and 5, page 1242; Western Union Telegraph Co. v. Roberts, 34 Tex.Civ.App. 76, 78 S.W. 522, writ refused. The question therefore arises, Has the trial court abused his discretion and deprived the plaintiff in error of a substantial right? We do not think so. The stipulation agreed to by the parties showed that Hodges entered the employment of Walker in the year 1929 in the state of Oklahoma, and that he continued in Walker's employment in the state of Oklahoma until some time prior to the year 1933, at which time Hodges came with Walker to Texas, and that he had been in the employment of Walker continuously since that time. It was further stipulated "that for at least two and one-half years prior to the time of his death, he was steadily employed in New Mexico and lost no appreciable time during that period; that at the time of his death the said H. B. Hodges was drawing a salary of $165.00 per month." We think we must keep in mind that our compensation law was enacted for the benefit and protection of our employees rather than for the benefit and protection of the compensation carriers. It would be folly to say that the compensation carrier could have been surprised or prejudiced by the court permitting the case to be reopened and evidence introduced showing the salary of H. B. Hodges for the year immediately preceding his death. We are of the opinion that the trial court did not abuse his discretion, and we feel that he should be commended for his action in seeking to make his court an efficient tribunal for the administration of justice. Plaintiff in error's counsel bitterly complain that their chief counsel had left the city when the case was reopened. It is not contended that plaintiff in error's counsel had been excused by the court. Their active local counsel was present and cross-examined Mrs. Hodges, when she was placed on the stand. Our Supreme Court has held that a trial is not concluded until motions for judgment and motion for new trial are disposed of. Nevitt v. Wilson, 116 Tex. 29, 285 S.W. 1079, 48 A.L.R. 355.

Assignments of error Nos. 43 and 44 attack the judgment on the ground that there is no proof or pleadings to support the computation of the wage rate under the plans and methods specified in the law. It was stipulated by the parties that H. B. Hodges, for at least two and one-half years prior to the time of his death, was steadily employed and lost no appreciable time from his work; and that at the time of his death he was drawing a salary of $165 per month. In addition thereto, the evidence was uncontroverted that H. B. Hodges was paid $165 per month for more than a year prior to his death. The jury found, in response to special issue No. 10 of the court's charge, that B. F. Walker paid H. B. Hodges a salary of $165 per month for twelve months immediately preceding his death. Under the foregoing condition of the record, the trial court was required to compute the average weekly wage of Hodges by taking $\frac{1}{52}$ of the amount actually paid. Petroleum Casualty Co. v. Williams, Tex.Com.App., 15 S.W. 2d 553; Traders & General Ins. Co. v. Boysen, Tex.Civ.App., 123 S.W.2d 1016, point 20, page 1027. The foregoing assignments are overruled.

The judgment of the trial court is affirmed.