**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Allon D. WILSON, Appellee.**

**No. 17977.**

Court of Civil Appeals of Texas, Fort Worth.

March 9, 1978.

Rehearing Denied April 6, 1978.

Henderson, Bryant & Wolfe, and James E. Henderson, Sherman, for appellant.

Henry & Hatcher, Gainesville, Kelsey, Wood & Gregory and Richard H. Kelsey, Denton, for appellee.

## OPINION

SPURLOCK, Justice.

Allon D. Wilson, the injured worker, obtained judgment in the trial court upon a jury verdict for workmen's compensation benefits for total and permanent incapacity, beginning on August 12, 1972, the date of his injury. The insurance carrier, Texas Employers' Insurance Association, has perfected its appeal.

We affirm.

By three points of error, the insurance carrier contends that the trial court's judgment should be reversed because: (1) the evidence did not support a finding of any

total incapacity under the workmen's compensation law, because the worker did not sustain any loss of earning capacity; (2) the jury's findings of permanent and total incapacity are so contrary to the great weight and preponderance of the evidence so as to be manifestly unjust; and (3) since for three and one-half years after his injury, he retained his employment with the employer for whom he worked at the time of his injury (with periodic increases in wages), and thereafter (but before trial) obtained new employment at even higher pay for one year before trial, he could not have been totally incapacitated under the workmen's compensation law.

Prior to his injury, the worker was an oil field roustabout, doing heavy physical labor in the oil field. His duties included (among others) the loading and unloading of boxcars, operating winch equipment, working on the rig, and driving various vehicles. His job necessitated climbing, lifting, stooping, and bending. The worker received an on-the-job injury while working for Ballew Trucking Company, for whom he had worked for seventeen years. The injury occurred on August 12, 1972. After that time, he had to have help from his fellow workers in doing his work. He was no longer capable of doing the same kind of work for his employer that he could do prior to his injury, even though he continued in the employment of that employer. The evidence established that before and after the accident, he worked long hours (including substantial overtime) because of economic necessity. Since the time of his injury, he has been getting progressively worse.

Dr. Gary Dodson, a chiropractor, testified that Wilson had approximately a fifty percent partial disability of his whole body and an eighty percent disability to his right arm. There was a collapse or narrowing of the disc space between C–7 and T–1 which developed as a result of the accident. There is evidence of a narrowing of the disc space between C–4 and C–5. There has been some alteration in the sixth cervical segment, which puts further stress on the bones above. There is compression of the nerve roots in these areas. This irritates and causes some disfunction and pain in the nerves that go through this area and supply a portion of the arms. The first X-rays did not disclose arthritis; however, later X-rays demonstrated that he had developed traumatic arthritis with arthritic spurs pressing into the nerves. This arthritic condition is becoming progressively worse.

Texas Employers' Insurance Association sent the worker to Dr. David Steiner, an orthopedic surgeon. He testified that he had seen the patient at least nine times between November 16, 1973, and April 28, 1975. He testified that the major problem is nerve root irritation and the thoracic outlet syndrome is secondary. The surgery that he had recommended consisted of fusing the cervical spine, which meant removing the disc at the area of irritation. The worker had considerable tenderness in the base of his neck, and he had some discomfort hyperextending and flexing his neck. The doctor also found that he had a weakness in the grip of his right hand, which indicated to him some nerve impairment. This nerve irritation is located at C–7. He also testified that the worker is suffering from numbness in his right arm. He testified that Mr. Wilson had a disability of thirty percent as to his upper extremity. He prescribed pain medication and a cervical collar. Since the time of the accident, arthritis had developed in his neck and he was becoming progressively worse.

Dr. William F. Powell, who is one of two of the injured worker's regular family doctors, testified that there was a thirty percent disability to the man's body as a whole. He further testified that if Mr. Wilson came to him for a pre-employment physical, he would not pass him. He had often given Mr. Wilson shots at the emergency room in order to relieve his pain. He has a narrowing of disc space between C–3 and 4 and between C–4 and 5. Traumatic arthritis has developed. His condition will get progressively worse.

Dr. R. L. McLeroy, who practices medicine with Dr. Powell, had been the injured

worker's doctor for over twenty years. He testified that there was about a thirty percent disability to the worker's body as a whole. Further, he testified that the worker had no arthritis at first, but immediately after the injury, he had arthritis that had developed as a result of the accident. He has a thoracic outlet syndrome. Because of his injury, he has had some wasting of the muscles which could result in paralysis of the arm in the future. This condition is also beginning to develop in the left arm. He can work if he doesn't have to lift his arms up. This doctor performs pre-employment physical exams and would not pass him as a laborer or doing any activity involving stooping, bending or lifting. Also, he testified that this man's condition will become worse.

■ It is a well-established rule that no medical evidence is needed to support a total and permanent jury verdict in workmen's compensation cases. *Travelers Insurance Company v. Wade*, 373 S.W.2d 881 (Tex.Civ.App.—Dallas 1963, writ ref'd n. r. e.). But in the case at bar, there is substantial medical evidence.

■ In its instructions to the jury, the court defined "total incapacity" as follows: the term "total incapacity" does not mean absolute inability to perform any kind of labor, but means that one is disabled from performing the usual tasks of a workman, not merely the usual tasks of any particular trade or occupation, to such an extent that he cannot get and keep employment. Within the meaning of the workmen's compensation act, the term "total incapacity" does not mean "total incapacity" as that term is understood by the general public. Rather, we hold that the term "total incapacity" means that one is disabled from performing the usual tasks of a workman to such an extent that he cannot get and keep employment *performing the usual tasks of a workman.* See *Texas Employers' Insurance Association v. Johnson*, 323 S.W.2d 345 (Tex. Civ.App.—Amarillo 1959, writ ref'd n. r. e.). Such a conclusion is particularly justified in that it is an accepted rule that our workmen's compensation law should be liberally construed in favor of Texas employees. *Shelton v. Standard Insurance Company*, 389 S.W.2d 290 (Tex.1965); *Southern Underwriters v. Hodges*, 141 S.W.2d 707 (Tex. Civ.App.—Waco 1940, writ ref'd); *Gulf Casualty Co. v. Garner*, 48 S.W.2d 746 (Tex. Civ.App.—El Paso 1932, writ ref'd).

The insurance carrier's contention that the evidence in the case did not support a finding of any total incapacity is overruled.

■ It is an established rule that a worker may be "totally and permanently disabled" within the meaning of the workmen's compensation act while he is earning money. This is just one among many facts that the jury can properly consider in its deliberations. *Traders & General Ins. Co. v. Collins*, 179 S.W.2d 525 (Tex.Civ.App.— Galveston 1944, writ ref'd w. o. m.).

■ The insurance carrier is particularly concerned about the fact that this worker continued to put in a lot of overtime hours after his accident. However, the carrier has ignored the wage level of the worker at the time of his injury, which was $2.14 per hour. The injured worker testified that he was driven to work by necessity: He was paying off a loan on his car, he was paying a mortgage on his house, and he provided the sole support for his wife and fourteen year old son. The carrier also ignores the fact that it was not paying any weekly compensation benefits to this worker and that they (the carrier) refused to pay any of the worker's medical bills after January of 1976. Because of these facts and his low wage scale, we can understand that this injured worker was driven to work a substantial number of overtime hours both before and after the accident because of necessity. We would be more persuaded by the carrier's argument as to overtime work, if this injured worker at the time of injury had a very high wage rate and then continued to work substantial overtime after the injury, in that we might not be able to say under those circumstances that the worker was performing overtime work because of necessity. This worker was driven by economic necessity to work a substantial num-

ber of overtime hours *both before and after* his injury.

In *Trinity Universal Insurance Company v. Scott*, 342 S.W.2d 348 (Tex.Civ.App.— Fort Worth 1961, writ ref'd n. r. e.), Chief Justice Massey, speaking for this court, wrote:

"Where there is prima facie proof in the record which supports the judgment of a trial court for compensation by reason of total and permanent incapacity, the judgment will not be reversed merely because there is evidence in the same record which establishes that the disabled employee is in fact working and earning money. This is true regardless of the amount of money being earned. . . ." *Id.* at 349.

As Dr. David H. Steiner (the orthopedic surgeon selected by the insurance carrier) said: "Some people work with a lot of disability and suffering." We find that we must agree with Dr. Steiner, especially when a man is the sole support of his family and is driven to work by economic necessity, even though he is injured and in pain.

■ The insurance carrier is also concerned about the fact that the injured worker (three and one-half years after his accident) changed jobs by getting another job at a higher rate of pay. Of course, this was relevant information for consideration by the jury in its deliberations. The carrier, however, ignores the fact that much of the period between the time of the injury and the time of trial was a period of inflation (including double digit inflation at times), and once again, the carrier ignores the fact that this worker was working at a fairly low wage rate prior to changing jobs.

Having thoroughly considered the evidence in the record, we overrule the insurance carrier's third point of error.

This worker testified that he had trouble rotating his head and that his back and shoulder problems prevented him from driving rig-up trucks and winch equipment. If he tries to do any lifting, his neck and shoulder will go into a spasm. In his current employment, he can't drive as far as he could six months before without experiencing pain. Further, he experiences numbness in his right arm.

The evidence in this case shows that this worker was an admirable employee. He had worked for a total of seventeen years for the employer he was working for at the time of his injury. He continued in that employment for three and one-half years until he took another job. After his injury, he had not been able to perform the various tasks for his employer that he could perform before the accident. It appears that this admirable employee worked as hard as he could for his employer. Even though he was injured and despite the pain, he tried to do all the work that he could. He worked in order to provide the necessities of life for his family. He worked rather than allow himself and his family to become public charges.

We have carefully reviewed all the evidence in the record. We overrule the insurance carrier's second point of error; we hold that the jury's finding that this man was totally and permanently incapacitated (within the meaning of the workmen's compensation act) is not against the great weight and preponderance of the evidence. We conclude that the evidence shows that this man cannot perform the usual tasks of a workman within the meaning of the workmen's compensation act.

■ Appellee has asked that we assess an additional 10% damages against the insurance carrier for having taken a frivolous appeal only for the purpose of delay. See *Texas Emp. Ins. Ass'n v. Thornton*, 556 S.W.2d 393 (Tex.Civ.App.—Fort Worth 1977, no writ) for a discussion of the potential traps for appellees who make such a request. Although we see no merit in the points of error raised by the insurance carrier in this case, we are unable to conclude that this appeal was a frivolous appeal taken only for delay purposes. An appeal is not a frivolous appeal just because the appellate court does not agree with any of the appellant's positions. Accordingly, appellee's point of error asking for an additional ten percent as damages for a frivolous appeal is overruled.

The judgment of the trial court is affirmed.

MASSEY, C. J., dissents.

MASSEY, Justice, dissenting.

Had the claimant in this case continued to work for the company which was his employer at time of his injury, I probably would agree with the majority. However, by the tests appropriate to the determination of whether a jury finding of total incapacity is against the great weight and preponderance of the evidence in this case, a case where the claimant was able to and did secure employment by another, I have concluded that such finding was thus erroneous.

Of his own volition claimant changed jobs. In May of 1976 he went to work for a different employer. He was able to both secure and keep the new employment. Services performed differed only in degree of effort; both involved the performance of labor.

I quote from *Texas Employers Insurance Association v. Smith*, 374 S.W.2d 287, 294 (Tex.Civ.App.—Beaumont, 1963, no writ hist.), viz.:

"Defendant presents an able argument in support of its position, and relies heavily upon *Texas Employers Ins. Ass'n v. Moran*, Tex.Civ.App., 261 S.W.2d 855, and *Texas Employers Ins. Ass'n v. Vineyard*, Tex.Civ.App., 316 S.W.2d 156. In each of these cases, the findings of total and permanent disability were found by the Court of Civil Appeals to be against the great weight and preponderance of the evidence. *Also, in each of these cases, the plaintiffs had been able to obtain as well as retain employment.* In the present case at bar, the plaintiff had stayed on the job with the same employer, and therefore had not passed a pre-employment examination, and being on the same job, had been able to get those following him on the next shift to perform some of the tasks required of him which he testified he could not do. The testimony of Dr. John Albert Brown that he would not pass the plaintiff for employment, together with the other testimony, raised an issue for the jury to determine, as to whether the plaintiff was physically able to obtain employment." (Emphasis ours.)

*Indemnity Insurance Co. of North America v. Cady*, 356 S.W.2d 323 (Tex.Civ.App.—San Antonio, 1962, no writ hist.) was a case wherein the court, by an opinion of Associate Justice Pope, held that by appropriate tests a judgment for total and permanent disability based upon the jury finding of total incapacity should not be upheld on appeal because, among other things, he was able to secure employment from several employers other than that by whom he had been employed when he was injured after the date on which he was injured (apparently the date on which the jury found his period of total incapacity to have begun.) In that case it was stated that an additional reason for reversal lay in the claimant's work record following his injury, one indicative that it would probably not have been the work record following injury of one entitled to permanent total disability benefits. In the case presently under test we have the same kind of work record. The record shows no change in the hours claimant worked after as compared with those he had worked before the injury. Both before and following the supposed period of total incapacity the claimant put in a great deal of "overtime".

While I am aware of the rule that one may be totally and permanently incapacitated although he works and receives wages, nevertheless the proof in its entirety can be so overwhelmingly against the finding that it is the court's duty to order a new trial. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). To pirate the words of Judge Pope in *Cady, supra*: While I do not say, as a matter of law, that the claimant in the case before us was not totally and permanently disabled; I do say that, as a matter of fact from all this record, he was not.

After claimant sustained his injury August 2, 1972 (date which the jury found to have been the beginning date of his perma-

nent total incapacity) claimant lost no time from his usual work. While he was merely "carried" the remainder of that particular day he appeared the next working day thereafter and lost no time and no credit for having worked. His condition resultant from the injury gradually worsened; indeed, from the evidence adduced on trial it is probable that claimant ultimately will become totally incapacitated. However, it was the finding of the jury that a period of permanent total incapacity began August 12, 1972. Continually, after August 12, 1972, the claimant continued to work regularly at labor, though he was in pain. The evidence was that he was "carried" by his fellow employees from day to day while he refrained from performing the strenuous duties to which he was accustomed. Claimant admitted the performance of light duties.

There was not any interruption because of injury or effects therefrom and claimant continued to perform some labor. May of 1976—nearly four years after he was injured—claimant voluntarily quit his employment upon obtaining a job requiring labor-type services with a new employer at an increased salary. Although I deem the fact of increase in remuneration of minor importance claimant's new employment did result in his earning nearly half-again as much as was being earned at the time he quit working for his former employer.

As already noticed, this new employment beginning May of 1976 persisted for approximately one year and to time of the trial from which there was appeal. For his new employer claimant's work record continued to be exceptional. Not only did he work the usual number of hours of one in his field of endeavor but he habitually worked many hours "overtime", even up to trial.

In the above there is demonstration that (during the time the jury considered him totally incapacitated, and, more specifically, in May of 1976) claimant has actually been able to "get and keep employment". Even with consideration given all the other facts and circumstances placed in evidence and

tending to support the jury's finding that the claimant was totally incapacitated I am of the opinion that the finding was so contrary to the greater weight and preponderance of the evidence as to be clearly erroneous.

I would reverse the judgment and remand the case.