SUPERIOR INSURANCE COMPANY,
Appellant,

v.

W. E. BURNES, Appellee.

No. 12796.

Court of Civil Appeals of Texas.

Galveston.

April 28, 1955.

Rehearing Denied May 19, 1955.

Vinson, Elkins, Weems & Searls, Thos. B. Weatherly and J. M. Hopper, Houston, for appellant.

Hill, Brown, Kronzer & Abraham, Frank Abraham and W. James Kronzer, Houston, for appellee.

HAMBLEN, Chief Justice.

This suit was instituted in the District Court of Harris County by the appellee, W. E. Burnes, to recover compensation for alleged total permanent disability under the workmen's compensation statutes of the State of Texas. Appellee, while within the course of his employment for the Wyatt Metal and Boiler Works in Houston, was unfastening a chain from an overhead crane that was attached to a so-called "skirt-ring", which is a large metal cylinder twelve feet in diameter and six feet high. Appellee was on top of the "skirt-ring", and jumped off it, a distance of six feet, onto a concrete floor, when the ring was moved slightly by the overhead crane. He alleged that as a result of this occurrence he received injuries to his hip, back and spine, all of which resulted in total permanent incapacity. Trial before a jury resulted in a verdict which found appellee to have been totally and permanently disabled from the date of injury on March 8, 1951. This appeal is from a judgment entered upon such verdict.

In its brief appellant presents nineteen points of error. For the purposes of its ar-gument, appellant has grouped its stated points of error to present three basic propositions upon which it contends that the judgment entered below should be reversed and rendered, or, alternatively, reversed and remanded for a new trial. The points will be considered as they have been so grouped by appellant.

Points one to eleven, inclusive, while stating distinct errors assertedly committed by the trial court, and preserved in the record by appellant, are all directed to the contentions: (1) that there is no evidence in the record to support the submission of the issues of total permanent disability; or (2) that the verdict of the jury in response to such issues is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong. The first is determined by a review of the evidence in the light most favorable to the verdict, and if found to be correct, a reversal and rendition of the judgment would be required. The second is determined by a review of all the evidence, and if sustained, would require a reversal of the judgment entered, and a remand of the case for re-trial. We have concluded after reviewing the evidence in the manner indicated that neither of appellant's contentions can be sustained, and that consequently its points one to eleven, inclusive, must be overruled. Our reasons for such conclusion require a statement of the facts as presented by the record. The following, while necessarily condensed, is considered to be a fair summary of the facts which bear upon the question.

At the time of the trial of this case, which began about three years after appellee claimed to have sustained his injuries, appellee was thirty-four years of age, was married and had three children. He had completed two years of elementary school, and had never been gainfully employed in any capacity other than as a manual la-borer. He had been employed by Wyatt Metal & Boiler Works on three different occasions, beginning in 1942. His last employment with that employer began in 1947 and continued until December, 1953. On March 8, 1951, appellee was classified as a

fitter, working eight hours a day, six days a week, and earning $1.69 per hour. He described his work as consisting of fitting metal parts of boilers together preparatory to welding, and as necessitating occasional, to frequent, lifting and carrying of heavy objects.

Appellant reviews the evidence relative to appellee's activities following the time of his alleged injury substantially as follows:

After the accident occurred appellee continued with his employment for the remainder of the day and returned to work the next day, and in fact admitted that to the best of his recollection it was two or three weeks before it was necessary for him to take off any time as a result of this accident. He continued to work for Wyatt Metal & Boiler Works until December, 1953, more than two and one-half years following the date of the accident. In 1950, the year before appellee was injured, his total earnings were $3,368.95. In 1951, the year this accident occurred, appellee earned $4,550.54, and in 1952, when appellee was off from work for a period of nine weeks with yellow jaundice, he had an income of $3,907.01. In 1953, the year appellee was discharged, he earned $4,057.92, although he did not work during December of that year. During this two and one-half year period, appellee received several merit increases in pay in addition to general increases, and, at the time he was discharged, was receiving $1.99 per hour.

Essentially it is the appellant's contention that the undisputed evidence, as summarized above, completely negatives the assertion that appellee suffered total and permanent disability, and that there is no evidence in the record to warrant the submission of the issues upon which the judgment rests. Alternatively, it contends that in view of such evidence, the answers of the jury in response to the submitted issues are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong. In support of such contentions, it cites the following authorities: Texas Employers' Ins. Ass'n v. Moran, Tex.

Civ.App., 261 S.W.2d 855; Indemnity Ins. Co. of North America v. Campbell, Tex. Civ.App., 19 S.W.2d 622; Bishop v. Millers' Indemnity Underwriters, Tex.Civ.App., 254 S.W. 411; and Lumbermen's Reciprocal Ass'n v. Wells, Tex.Civ.App., 283 S.W. 208.

Our conclusion that appellant's points one to eleven, inclusive, must be overruled results not from any difference in view relative to the existence of undisputed evidence supporting the factual basis upon which it bases its stated contentions, but only from a different view of the legal effect of such evidence. It is our view that the stated evidence is not, as appellant contends, conclusive upon the issue of total and permanent disability, but is only evidentiary, and must be considered along with other evidence bearing upon the issue. The following additional evidence is considered by this Court to be probative of the ultimate fact:

On each of the three different occasions that he had worked for Wyatt Metal & Boiler Works, appellee had been passed physically by the company medical examiners. He was held in extremely high regard by the company as a worker, and as an honest, high type loyal man. He testified that when he jumped from the skirting, he was in a twisted position, and hit flat-footed on the concrete floor, causing him "severe real sharp pain" where his backbone hooked onto his hips. He did not think it serious at the time and continued on working that day; however when he got home that night he could hardly get out of the car because his back hurt so bad. His wife rubbed his back with liniment, but he got no rest that night. His wife testified that she pleaded with him to see a doctor, because, "I could tell from living with him as long as I had that he was in constant pain." Shortly thereafter appellee went to first aid where he received heat treatments two or three times a day. The nurse concluded that the heat treatments weren't doing him any good, and sent him to the company doctor. The doctor took appellee off his job from April 23 to May 14, and treated him with hot pads, novocaine injections, and a back belt. The doctor

recommended that appellee refrain from driving his car. The patient did not improve and the doctor requested a consultation with Dr. Edward T. Smith. Dr. Smith concluded that appellee had suffered a muscular or ligamentary strain of a congenitally weak back, which would take longer to get well than a normal back. Mrs. Burnes testified that her husband stayed in bed during the time of his layoff, taking treatments and taking his exercises, but that he seemed to get worse. She stated that he returned to work because they didn't have any money, that she was sick and going to a doctor herself, and that they had to have money.

On June 20, 1951, appellee went to see Dr. F. O. McGehee, an orthopedic specialist, and continued seeing him from then on around once a month. Dr. McGehee's examination revealed the following physical findings: the left leg was one-half inch smaller in diameter than the right; there was a positive Patrick's sign on the left; that the point of maximum tenderness was at the left of the lumbosacral joint; and there was twenty-five per cent restriction of motion to the left. The X-rays revealed the following abnormalities in his spine: (1) a slipping-over, or subluxation of the articular facets between the fifth lumbar and the sacrum; (2) a defect in the sacrum known as a spina bifida; and (3) some narrowing of the lumbosacral joint. He diagnosed the case as (1) a ruptured intervertebral disc, and (2) a traumatic injury to the articular facets on the left side between the lumbar 5 and 1st sacral segments. He felt that appellee's trouble was a combination of the slipping of the articular facets and a ruptured disc, and that the type of accident that appellee had (i. e., hitting flat-footed with a tendency to jack-knife) was typical of an accidental injury that might cause ruptured disc. Dr. McGehee reported to the Superior Insurance Company and prescribed a steel Nelson back brace until Mr. Burnes was able to have an operation. Although the brace had several repairs, Mr. Burnes has been wearing it since 1951, but has not as yet had the operation. The brace held the weight off his hips, but did not seem to be improving his condition.

Dr. McGehee, who had seen Mr. Burnes periodically from June, 1951, until the date of the trial, testified that appellee had a "serious condition", that he was not physically able to perform the substantial duties of a workman or to obtain and fulfill the duties of a workman, and that his condition was "permanent". On cross-examination he explained that a man has a way of protecting himself on the job, and that it was medically possible for him to be doing work that he wasn't actually able to do.

Mr. Burnes returned to work in his back brace, trying not to take off more than a day at a time because he "had to make a living." He stated he lost a day here and a day there (besides the several weeks he was off on two different occasions) because, as he stated, "I couldn't lose much time, I couldn't have lived." His wife testified that many a morning she begged him not to go to work because he wasn't able to. She stated that she would have to help him sit up where he could get out of bed, and that he would sit there a while and work his feet until he could go on to work. She stated that a lot of times she tried to keep him from going to work, but that he would go anyway.

After Mr. Burnes had worn the brace for six weeks, Dr. McGehee sent him to be examined by Dr. Marshall Henry, a neurosurgeon. Dr. Henry said he needed an operation and that he had a bad disc.

Thereafter, Dr. McGehee made his report to the insurance company, and Mr. Burnes was called into the Personnel Office. Mr. W. E. Furley, personnel manager, told him it was the policy of Wyatt Metal & Boiler Works to take care of their employees and that they would see that he was taken care of. Mr. Furley requested that Mr. Burnes go to a doctor of their choice, Dr. James Greenwood. Before an appointment was made, Mr. Burnes came down with yellow jaundice and his visit to Dr. Greenwood was postponed for nine weeks. Afterwards, Mr. Furley told him to go ahead and take his vacation before seeing

Dr. Greenwood. When he got back from his vacation, an appointment was made with Dr. Greenwood. He waited three weeks for the company to get Dr. Greenwood's report and then went back up to the office only to find Mr. Furley was on his vacation. When Mr. Furley got back off of vacation, a conference was arranged with the employee, the employer, and a representative of the Superior Insurance Company. They discussed the cost of a ruptured disc operation, and the insurance company was advised of the cost. They told Mr. Burnes that that was "too much" and for him to find somebody who would do it cheaper and let them know. That discussion took place in September, 1952. Shortly thereafter, Mr. Burnes filed a claim before the Industrial Accident Board in Austin for workmen's compensation benefits.

Though he was on the job and drawing his pay, he stated that he wasn't really able to work. The lower part of his back ached him continually. If he walked on uneven ground, or stood too long, it got worse, and the pain radiated down both of his legs. His foreman testified that he couldn't get around "normally" and that it was "apparent that he had an impediment." He had to squat to pick anything up. If he bent his back, he couldn't stand the pain. He had to walk very slow, limping to one side. After being in a stooped position, he couldn't straighten back up immediately.

The company discharged Burnes from their employment in December, 1953. The personnel manager stated that "the major reason was his having lost some time." Dr. McGehee had recommended that Mr. Burnes lay off of work two weeks in December, and when he came back to work, Mr. Furley told him that under the circumstances, and Mr. Burnes having reported that he was totally and permanently disabled, the company didn't see how they could keep him on any longer. Mr. Burnes stated that Mr. Furley told him that they were discharging him because he was losing too much time.

After Mr. Burnes was discharged from the Wyatt Metal & Boiler Works, he went to Rockdale, Texas, and rented a two-pump service station, where his wife and oldest son did most of the work.

Mr. Burnes stated, "I am not able to do it, but I have got to do something, and that is as near as I can get to where I can be idle part of the time and work part of the time." He lies down on a cot in the back of the filling station every once in a while.

█ It is this Court's conclusion, after examining the authorities cited in able briefs furnished by both litigants, that the evidence as outlined, not only supports, but compels, the submission to the jury of the issues of total and permanent disability. We are further of the view that, based upon all of the evidence, the answers of the jury in response to such issues are not so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong. Traders & General Insurance Co. v. Heath, Tex.Civ.App., 197 S.W.2d 130; Texas State Highway Department v. Kinsler, Tex.Civ.App., 230 S.W.2d 364; Trinity Universal Insurance Co. v. Rose, Tex.Civ. App., 217 S.W.2d 425; Davies v. Texas Employers' Insurance Association, Tex. Com.App., 29 S.W.2d 987; Traders & General Insurance Co. v. Collins, Tex.Civ.App., 179 S.W.2d 525.

Appellant's points twelve to fourteen, inclusive, complain of the excessiveness of the judgment, and the error of the trial court in refusing to require a remittitur. The amount of the judgment as entered is admittedly in accord with the applicable sections of the workmen's compensation statutes of this State. Vernon's Ann.Civ.St. art. 8306 et seq. As we understand the authorities relied upon by appellant, a remittitur in this type of proceeding can be ordered only when the jury finding upon which it is based lacks support. Our holding that the record supports the findings of total and permanent disability manifestly requires that appellant's points twelve to fourteen, inclusive, be overruled.

At the conclusion of the evidence, the appellant requested the trial court to submit to the jury its requested special charge and

special issues framed and numbered as follows:

"Gentlemen of the Jury:

"Where injury is sustained by an employee in the course of his employment, which results in his disability within the meaning of our Compensation Law, he is entitled to compensation therefor notwithstanding said injury is aggravated or enhanced by the effect of sacralization, partial fusion or arthritis in his spine existing at the time of such injuries; but he is not entitled to compensation after the termination of such period of aggravation when the sole producing cause of such disability is the sacralization, partial fusion or arthritis.

"Special Issue No. 23: Was the plaintiff, W. E. Burnes, suffering from sacralization, partial fusion or arthritis in his spine or back on and immediately prior to March 8, 1951? Answer 'We do' or 'We do not'.

"Special Issue No. 24: Was the condition of W. E. Burnes' back, which you have found in response to the preceding issue, the sole producing cause of his incapacity on March 8, 1951, if any, you have found? Answer 'We do' or 'We do not'.

"Special Issue No. 25: Is the condition of W. E. Burnes' back, which you have found in response to Special Issue No. 23, the sole producing cause of his incapacity now, if any you have found? Answer 'We do' or 'We do not'.

"Special Issue No. 26: Will the condition of W. E. Burnes' back, which you have found in response to Special Issue No. 23, be the sole producing cause of his incapacity, if any, you have found, at any time in the future? Answer 'Yes' or 'No'.

"Special Issue No. 27: At what date in the future do you find that the condition of W. E. Burnes' back, which we have found in response to Special Issue No. 23, will be the sole producing cause of his incapacity, if any you have found? Answer by giving the date in the future."

The court refused to submit such special issues or the special charge, and in lieu thereof, submitted Special Issue No. 23, as follows:

"Do you find from a preponderance of the evidence that the sacralization, or partial fusion or arthritis condition, or spina bifida occulta, or any combinations thereof, existing in the spine or back of the plaintiff, W. E. Burnes, before March 8, 1951, disconnected with an injury, if any, sustained by him on March 8, 1951, is not the sole cause of the incapacity, if any, you have found? Answer: It is not the sole cause of the incapacity, or it is the sole cause of the incapacity."

The asserted error of the trial court in refusing the submission of the requested charge and issues, and the submission of Special Issue No. 23, forms the basis of appellant's points fifteen to nineteen, inclusive.

We are of the opinion that such points must be overruled for two reasons. Rule 279, Texas Rules of Civil Procedure, provides that failure to submit an issue shall not be deemed a ground for reversal of the judgment unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment. It has been held that a requested issue which fails to properly cast the burden of proof is not in substantially correct wording within the meaning of the stated rule. Mitchell v. Mills, Tex.Civ.App., 264 S.W.2d 749. This failure is manifest in appellant's requested issues Nos. 23 to 27, inclusive. Aside however from the purely procedural basis for overruling appellant's contention, we are unable to see how appellant could have suffered any injury by the failure of the court to submit its requested special charge and special issues, in view of inclusion of the same defensive theory in Special Issue 23 as submitted. Appellant's contention appears to this Court to have been clearly answered in the recent opinion of the Supreme Court of Texas in the case of Yellow Cab & Baggage Co. v. Green, 277 S.W.2d 92. We find our conclusion to be supported also by the following authorities: Southern Underwriters v. Weldon, Tex.Civ.App., 142

S.W.2d 574; Southern Underwriters v. Parker, Tex.Civ.App., 129 S.W.2d 738.

For the reasons stated, we are of the opinion that the judgment of the trial court should be affirmed.

Affirmed.