ROYAL INDEMNITY COMPANY, Appellant,

v.

William E. YANCEY, Appellee.

No. 6520.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 22, 1962.

Orgain, Bell & Tucker, Beaumont, for appellant.

Stephenson & Stephenson, Orange, for appellee.

McNEILL, Justice.

This is a Workmen's Compensation case. Appellee Yancey, employee, was injured August 21, 1960, while working for Stone & Webster on a construction job building the Gulf States Utilities plant at Bridge City, in Orange County. At the time of his injury he was operating a bulldozer, the weather was wet and much mud existed in the area. He had climbed up to sit down on the seat of the dozer when his feet went out from under him and he fell off the dozer, hitting a cleat on the dozer tire with his back and slipping on down to the ground with one leg pinned under him, leaning up against the side of the dozer. He was unable to get up and called for help. Two fellow-workmen pulled him up. He was helped into the seat of a truck and was taken to First Aid and then on to see a Dr. Howard Williams of Orange. The cause was tried before a jury and from a verdict and judgment awarding appellee total and permanent disability, this appeal was taken.

The first point complained of by appellant is that there was no evidence to sustain the finding of total permanent incapacity. The third point asserts that such finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. The testimony bearing on these questions is summarized as follows:

Testimony of appellee: Before this injury he was able to do just about any kind of hard work and was in A–1 condition. In 1956 he had an encounter with the superintendent on a previous job and had been hit by him in the fight. This caused him to be off from work a few days but he lost no great deal of time on account of it. He was 39 years of age, of stocky build and had a farm near Silsbee. He had done much work on it himself, such as building his home, plowing and other things that go with ordinary farming operations, but since his recent accident he had been unable to work on it but had to hire all his labor except that which his wife and children did. At the time of his injury he was operating a bulldozer which is considered hard physical work. Since that time he has worked about half the time but has to take light work only. For some four months previous to a week before the trial he ran an air compressor which is considered light work. His duties as operator of an air compressor were starting the machine, which is done with an electric starter like an automobile would have, opening the air valves, checking the oil, shutting it down at noon and starting it back up and shutting it off at night. For a few days before the trial he

was operating a small hydraulically controlled crane with a boom on it for Natkin Construction Company. This machine has four little levers that he can pull, and a seat to sit on. This machine does not jostle or bounce when it is operated. He stated he was able to do this type of work but his back never stopped hurting; he was always in pain even in doing light work but he had to work to support his family, as he had no independent income. He stated he was not able to do heavy work. He obtained his work through announcement of jobs at his union hall. When they call out for heavy bulldozer jobs at the hall he had to pass them up now, although he had followed this work for 14 years. He stated that he had to do light work that does not require lifting, bending, squatting, stooping or strain of any kind on his back.

He had a good sized bruise over his kidney caused by falling on the cleat on the dozer tire. After his injury he stayed on the Stone & Webster payroll for two weeks and then his work was terminated. When hurt he was taken to Dr. Howard Williams at Orange but after two weeks he concluded this doctor was not doing him any good and he refused to go back. Whether he was discharged on account of this, the record is in dispute. Someone suggested that he see Dr. W. W. Glass, Jr., of Port Arthur. He went to see Dr. Glass on September 19, 1960, and this doctor put him in Park Place Hospital for 9 days during which time he was in traction and was given sedatives. After discharge from hospital he continued to see Dr. Glass through October and then was released for work. He stated he told Dr. Glass he was not able to go back to work and Dr. Glass prescribed a back brace which he got and wore quite awhile but it did not help. He was then sent by his attorney to Dr. Covington of Orange who he said gave him a thorough examination.

Appellee further testified that it seemed to him that his back was continually getting worse, and he did not believe he would ever be able to do manual labor again.

His legs and hips as well as his back bother him and he sometimes has headaches. He did not believe he would ever be able to do heavy work. On cross-examination he stated there were both heavy and light types of work with the Stone & Webster people but they did not see fit to give him light work; that he had never had back trouble until he fell off the bulldozer. It may be stated here that appellant put in evidence part of appellee's deposition taken in the case growing out of the affair with a former employer's superintendent, above mentioned, in which he testified his back was hurt on account of the altercation. That suit was settled a few years back for about $800.

After he was released by Dr. Glass he worked a few days for American Bridge Company operating a welding machine, which was light work. For about the last four months he has worked for Natkin Construction Company in Beaumont, operating the air compressor and light crane mentioned above. He has done some of the same type of work after the accident that he did before. He has never had but one other suit and that was the one settled for $800.

Adin Davis, witness for appellee: Davis saw Yancey fall from bulldozer, went over to him and he was suffering pain and said he had hurt his back; he had a bruised place on his back from this fall as his shirt was torn at the place and witness could see it. He stated further that at a later time Yancey pointed out to him where he was hurting beneath the shoulder blades and below his waist line.

Testimony of Dr. C. M. Covington of Orange for appellee: While X-rays made did not show a narrowing of the disc spaces in Yancey's back, he was satisfied that he had had and is now having considerable pain, and is further satisfied that Yancey is developing the symptoms of an impinged disc and a man with such a disc cannot do hard manual labor. He testified that his patient has lost most of the feeling in an

area of his left leg and the reflex of one Achilles heel was gone, and that the muscles in his back were tender and sore. This doctor stated the fall he sustained from the dozer would have been sufficient to produce the condition just described, and that Yancey's injury will cause him to be permanently disabled. On cross-examination he said Yancey's trouble was mostly on his left side; and a myelogram test would have shown whether a disc injury existed, but none was made on Yancey; that X-rays will not always disclose an impinged or injured disc; that while there did not appear to be a narrowing of the spaces between vertebrae, this is not conclusive and he considered Yancey's trouble to be in the area of the lumbar 2, 3 and 4 region, but it is difficult to pinpoint the exact place in a person as obese as is Yancey.

Appellee's wife testified: that her husband was well and strong prior to his accident in August, 1960, but since that time he has been unable to do work on the farm or any carpenter work since his injury and his back is not getting better. Yancey stated he was paid as much on the lighter work done after the injury as he had been paid as a bulldozer operator.

Testimony of appellant's witnesses: Dr. Howard Williams, general practitioner of Orange, testified that Yancey was brought to him on the day of the accident and he complained of being hit on the back from a fall on the right side of his back. X-rays were made but they were negative. This doctor treated him a short time and thought he was then apparently well and able to go back to work.

Dr. James Cloud, orthopedist of Orange, testified: Dr. Williams referred Yancey to him and he examined Yancey one time and that was on September 13, 1960. He stated he found no objective symptoms of back injury and he wrote an opinion after his examination that he did not think the patient had any permanent incapacity from the injury. He ran several different tests on the patient's back and they all turned out negative.

Dr. W. W. Glass, Jr. for appellant: Mr. Glass testified that he had been an orthopedist in Port Arthur for a number of years; that Yancey came to him with a complaint of pain primarily in his upper right lumbar region with some radiation in his right hip. He did not complain at the time of pain in either leg and stated that pain in the back would sometimes involve the sciatic nerve, but if a person had no such pain in either leg it is significant. On further examination Dr. Glass said he found pain radiating in Yancey's right hip and later there was pain on his left side. He found no marks of violence or bruise on Yancey's back; he found some tenderness over the lumbar region but this was based on subjective symptoms. He stated he made the usual tests on the man and they were all negative. X-rays were made of his back and they had no significance. He further stated that objectively he could find no basis for Yancey's complaints. However, since he was a rather heavy-set man he fitted the patient with a corset or brace for his back as a support as he considered this would be helpful. This doctor put Yancey in Park Place Hospital where he stayed in traction nine days. He was given medicine to relax his muscles, but these things were done purely on subjective symptoms. He saw Yancey several times during the time he treated him. On October 24, 1960 he again examined Yancey and from such examination he was of the opinion he was able to go back to work as a bulldozer operator and do ordinary manual labor, and that he had made a complete recovery.

■ On this summary appellant's first point is without merit. Is the verdict sustaining total and permanent disability so against the great weight and preponderance of the evidence as to be manifestly unjust? In view of counsel for appellant's able argument, we have given considerable attention to this question. In doing so, we have

studied the cases cited by appellant, especially Texas Emp. Ins. Ass'n v. Moran, Tex.Civ.App., 261 S.W.2d 855 and Texas Emp. Ins. Ass'n v. Vineyard, Tex.Civ.App., 316 S.W.2d 156. We think, though, there is considerable difference between these cases and the present one. The employee in the one now before us had sustained his injury only about eight months before the trial, and had worked only about half time. He was 39 years old and obese. It was not shown that he could hold and retain employment for a considerable time even doing lighter work, the longest being a period of four months. In the Moran case the employee had passed a physical examination with a new company which employed him and he remained on this one job eleven months, was holding the job at time of trial, had worked overtime every two weeks period of the eleven months, and his wages had been twice increased by his new employer. In the Vineyard case the employee shows even more ability to hold a job with increases in salary and promotion. The facts of the present case fit more nearly those in Superior Ins. Co. v. Burnes, Tex. Civ.App., 278 S.W.2d 934 and Consolidated Casualty Ins. Co. v. Baker, Tex.Civ.App., 297 S.W.2d 706. Upon the point at issue we realize our responsibility. However, we are persuaded that as said by Justice Tirey in the case last cited (p. 717): "The fact that he (employee) was willing to work to earn a livelihood and suffer pain does not take away from him the benefits provided under the provisions of the Workmen's Compensation Act, Art. 8306 et seq., V.A. C.S." It must be remembered that the jury was in a more favorable position to hear and determine the facts involved and the weight of the evidence than is this court. We are not convinced that the verdict was manifestly unjust, and consequently overrule appellant's third point.

■ The fourth point urges that since appellee testified he was not contending he was totally disabled, this was, in effect, a judicial admission made by him. Appellant bases its point upon appellee's cross-examination from which we quote: "Q. You are not contending here that you cannot do any work of a remunerative nature; in other words, you are only contending you can do less work than you used to, is that right? A. That's right. Q. In other words, you say you can't do the heavy work, but you can do the lighter work that you are now doing, is that right? A. That I am doing now? Q. Yeah. A. Yes, sir, I can do that now." This, however, must be construed with other testimony which appellee gave to the effect that he would not be able to do manual labor again, and that while he could do the light work mentioned in this question, this was done in face of constant pain and as result of necessity.

■ After he was injured, Yancey had gone to Dr. Williams, the company doctor, for some two weeks, and was not satisfied with the help he was getting so he quit going back. The superintendent asked him to return to Dr. Williams, which he refused to do and thereupon Yancey was allowed to testify that the superintendent told him: "You will either go or I'll fire you." Proper objection was made at this point to the superintendent's statement on the ground that it was hearsay and appellant requested the court to instruct the jury to disregard the statement, which was refused. Appellee was then allowed to state that the superintendent told him they needed further X-rays of him, and again he quoted the superintendent as saying, "You'll either go back or I will fire you; I'll fun (run) you off the job." Appellee's further testimony on this point is: " * * * and I said, 'Well, you might just as well fire me because I'm not going back. He's had fourteen days to do something for me and he hasn't done a thing.' So, he had me fired; clocked my card out . . . I seen them when they clocked my card out of the office and brought it back in and gave me my check. They wrote my check and carried it out to the master mechanic and when I went to get it, the personnel man ran out and told me they was not going to fire me and three

days later, I was laid off because of reduction in force."

Dr. Williams was appellant's physician to whom appellee's employer took appellee when he was injured. The employer's superintendent would, therefore, have authority from appellant to direct Yancey to return to Dr. Williams for further X-rays. Yancey showed his displeasure with the doctor's treatment of him and refused to go, thus bringing about the threat as testified to. Under the circumstances we think the testimony was admissible. But if mistaken, we are of the opinion that the refusal of appellee to return merely for X-rays was arbitrary and unreasonable upon his part, and his failure to comply would not aid his cause with the jury. We, therefore, fail to see material error in the admission of the testimony.

■ The last complaint appellant makes is found in its sixth point which is to the effect that the trial court erred in refusing to allow it to introduce in evidence an excerpt from a medical report of Dr. Joe Dickerson, which appellee had filed with the Industrial Accident Board in his claim on account of his previous injury growing out of the altercation he had with the superintendent on the earlier job in December, 1956. At the time, appellee was under cross-examination by appellant, and he was asked if he had not filed a claim with the Board in that matter in which he asserted he was totally disabled. Appellee having answered that he did not remember this, appellant then offered the excerpt from Dr. Joe Dickerson's letter, filed in said claim on February 26, 1957, "In my opinion, this man is suffering with a brain concussion and low back strain as a result of his injury of December 28, 1956. He will be totally disabled indefinitely as a result of this injury." Upon objection that this is hearsay, the court excluded the quoted excerpt. The letter was properly certified to by the Secretary of the Industrial Accident Board, and appellant offered it by way of impeachment and in the nature of admission against

interest. It was shown prior to the offer of this evidence that appellee had filed a suit for permanent partial disability of 15 percent on account of the injury of December 28, 1956, and that this suit was settled for about $800. We need not decide whether this evidence was admissible. For present purposes we assume that it was. But its exclusion did not produce prejudicial error. While appellant's counsel was questioning appellee about his former claim, he was asked whether he had made any claim in the previous claim as to having had bad backaches since his fight and whether his back bothered him. In reply he stated he did not remember since it had been several years ago when the incident occurred. For the purpose of refreshing his memory and also for the purpose of impeachment, the court allowed appellant to admit portions of appellee's testimony taken in a deposition, in connection with his former suit about a year after the altercation took place. In that suit he claimed that he had had headaches ever since, and that his back bothered him. It also was allowed to offer in evidence appellee's testimony in said deposition to the effect that the fight must have hurt his back when he was knocked across "stuff" because "my back is bothering me since that time." Appellee's deposition testimony further revealed that in explanation of his back trouble, appellee stated he had a hurting in his back at night when he lay down and that he would need a pillow or something under his back to help him. Because the court allowed this evidence given in the former suit to go in, and because of the fact that his suit filed on the previous claim did not assert any claim for *total* disability, and was settled for the relatively modest amount of $800, we hold the error, if any, in excluding the excerpt from the doctor's letter was not reversible error. Rule 434, Texas Rules of Civil Procedure.

The judgment of the trial court is affirmed.

STEPHENSON, J., not sitting.