## LUMBERMEN'S RECIPROCAL ASS'N v. WELLS. (No. 1385.)

(Court of Civil Appeals of Texas. Beaumont. April·12, 1926.)

1. **Master and servant** ⟬⟭405(6)—**Evidence held insufficient to support finding of permanent and total incapacity of workman injured by log** (Workmen's Compensation Act [Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.]).

In a suit to set aside award of the Industrial Board as too small, evidence *held* insufficient to support finding that injuries received by plaintiff when log rolled off car, injuring plaintiff in head, and breaking leg, totally and permanently incapacitated plaintiff to labor, within meaning of Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.).

2. **Master and servant** ⟬⟭385(5)—**"Total incapacity" means injury disqualifying injured party from performing usual tasks of workman** (Workmen's Compensation Act [Vernon's Ann. Civ. St. Supp. 1918, art: 5246—1 et seq.]).

The expression "total incapacity," as used in Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.). means such injury as disqualifies injured person from performing the usual tasks of a workman to such extent that he cannot procure and retain employment.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Total Incapacity.]

3. **Witnesses** ⟬⟭37(1)—**Plaintiff's counsel held incompetent to testify that X-ray pictures were properly made, and that doctor taking them was qualified and equipped to do so.**

Plaintiff's counsel *held* incompetent to testify that X-ray pictures were properly made and that doctor taking them was a competent physician and surgeon, properly equipped with necessary machinery to make them, in absence of any evidence to show how he could know such facts.

Appeal from District Court, San Augustine County; V. H. Stark, Judge.

Suit by Edwin Wells against the Lumbermen's Reciprocal Association to set aside an award of the Industrial Accident Board made in his favor for $115.67. From a judgment for plaintiff for $4,162.38, less $216.49, defendant appeals. Reversed and remanded.

Andrews, Streetman, Logue & Mobley, of Houston, for appellant.

V. E. Middlebrook, of Nacogdoches, for appellee.

HIGHTOWER, C. J. This suit was filed by the appellee, Edwin Wells, against appellant, Lumbermen's Reciprocal Association, in the district court of San Augustine county, to set aside an award of the Industrial Accident Board, made in favor of appellee and against appellant on September 20, 1923, for $332.16, less payments that had already been made to Wells, aggregating $216.49, the remainder of the total award being $115.67.

Stating in substance the material allegations of appellee's petition, they are:

That about January 31, 1923, he was an employé of the Collwood Lumber Company, and was engaged in the discharge of his duties loading logs on railroad cars out in the woods to be hauled and transported to the Collwood Lumber Company's mill, and that on the date mentioned, and while in the performance of his duties for the Collwood Lumber Company, he was seriously and permanently injured by one of the logs falling from the car he was loading, and striking him about the head and face, knocking him down, inflicting serious and permanent injury to his left eye, his left ear, and breaking his right leg just above the ankle, and seriously and permanently injuring the ankle itself, and other bruises about the face and head. He further alleged that the Collwood Lumber Company, his employer, was a subscriber under the Employers' Liability Act of this state, and that appellant here carried the insurance of the Collwood Lumber Company covering its employés, including the appellee.

The appellant answered by general demurrer, general and special denials, and by other special pleas unnecessary to here mention, in view of our disposition of this case.

The case was tried with a jury, and was submitted upon special issues, and upon the verdict as returned the trial court, on August 3, 1925, entered judgment in favor of appellee for $4,162.38, payable at the rate of $10.38 a week for 40 weeks, beginning February 8, 1923, less $216.49, which last amount had already been paid appellee before this suit was filed. After appellant's motion for a new trial had been overruled, this appeal was duly prosecuted, and is now before this court.

Quite a number of assignments of error with related propositions are advanced by appellant for reversal of this judgment, but the majority of them relate to matters that will probably not arise upon another trial, and for that reason we shall not further mention them.

Appellee alleged, in substance, in his petition in this case, that the award made by the board in his favor was entirely too little and wholly unjust, for the reason that the injuries sustained by him at the time in question, as before stated, were such as to permanently and totally incapacitate him, and that, therefore, the award should be set aside and judgment should be rendered in his favor for compensation commensurate with his injuries and damage.

[1] Appellant's first contention, stated in substance, is that the jury's finding, in answer to a special issue, that the injuries received by appellee were such as to permanent-

ly and totally incapacitate him as a workman is so wholly without support in the evidence adduced upon the trial as to require reversal of that verdict and judgment based upon it at our hands. After carefully analyzing the entire statement of facts in this record, we have reached the conclusion that this contention must be sustained. We shall not undertake to quote the evidence of the witnesses as found in this record, but will state the substance of it as showing the reasons justifying the conclusion we have reached on this point.

The evidence shows that at the time appellee was injured he was loading logs in the woods onto railroad cars, to be transported to the Collwood Lumber Company's sawmill, and that his position was what is commonly called "top loader"; that is, he was up on top of the car upon which the logs were being loaded and piled, and assistants in the business, or coemployés, were working in other positions. After the car on which he was working at the time of his injury had been practically loaded, appellee got down on the ground by the side of it, and, for some reason, the logs commenced falling off the car, and one of them struck him about the head, knocking him down on the ground, and another one rolled over his right leg and foot, breaking the right leg just above the ankle, and injuring the ankle itself. The evidence also shows that his left ear was badly bruised and injured, and that the hearing in it has been impaired to a certain extent, though not in excess of 50 per cent. and that his left eye has been impaired to a certain extent, in that he cannot stand to read as well as he did before the injury, and cannot read as long as he did before the injury, and the evidence further shows that his face was badly bruised and lacerated, and the left cheek bone was so badly mashed that some time after the injury one of the bones of the cheek came out through the flesh. This states, in substance, the material injuries received by appellee for which he is seeking compensation for permanent and total incapacity in this suit.

Appellee's father, W. T. Wells, testified, in substance, that before appellee's injuries he was a sound and healthy young man, and that he had never had any ear trouble or eye trouble prior to that time, and that he had no injury to either of his legs or feet; that since the injuries he did not consider that appellee was as good a man physically as he had been before, as there was a slight lameness in his right leg and ankle, and that he had heard him complain on several occasions of pain in his left ear and in his left eye. This witness further testified, in substance, that in the spring and summer of 1924 and 1925 the appellee had farmed land on witness' place, the first year about ten acres, and something less than that acreage the second year, and that he made a fairly good crop each year with the assistance of witness and appellee's wife. He further testified that about the 1st of August, 1924, appellee again went to work for the Long-Bell Lumber Company, sawing logs in the woods, and afterwards became a log scaler for that company. The witness stated that he did not know just how appellee was paid for the work for the Long-Bell Lumber Company, but thought that he was paid and did his work about like other employés of that company.

J. W. Ryan, a witness for appellee, testified, in substance, that he was present at the time the injuries to appellee occurred, and saw it, and described it in detail, stating that the right leg was broken above the ankle, and that appellee was bleeding about the head and face and injured in his left eye, and that witness assisted him home in this condition. He further testified that before the injury appellee was a sound and healthy young man, and did his work of loading logs in a satisfactory manner and witness considered him a very active and vigorous young man. He further stated that he had not seen appellee often since the injury, and could not say whether he had been able to do the same character of work that he was doing before the injury. He stated that the compensation paid appellee before and at the time of the injury was $3.50 per day.

M. C. Flournoy, another witness for appellee, testified, in substance, that he was just a few yards distant from appellee at the time he received his injuries, and ran to him at once, and described his injuries just about as Mr. Ryan did. He further stated that he saw appellee every day or so while he was confined to his bed from the injuries, and had seen him frequently, perhaps on an average of once a week, or several times a month, since he had recovered, and that he could now observe a slight difference in appellee's step from what it was before the injury; that he did not move with the same smooth carriage that he used to have before the injury to his right leg. Witness did not know whether appellee had done the same character of work since the injury that he was doing before.

Mrs. Wells, appellee's wife, testified, in substance, that appellee was confined to his bed from the injuries about six weeks, and then went to Houston to be treated by a clinic and other specialists there, and remained in Houston, she thought, about three months, and then returned home. She further testified that before injured appellee was a very vigorous and stout young man, and able to do any character of physical labor, but that, since the injuries, he was not able to work to the extent that he could work before, and that the hearing in his left ear had become impaired, and that his left eye was also impaired, and that she had frequently heard him complain of pain in his

left ear since the injuries, and also witness knew that he could not read, and especially at night, as he had before, because it gave him pain in his eye and head.

The undisputed evidence in the case further shows, in substance, that some time in the winter of 1923, appellee made ties, not a great many, perhaps not exceeding 100, and he testified that he could have made the same number of ties in perhaps ten days if it had not been for the injuries sustained by him. Relative to his employment with the Long-Bell Lumber Company, appellee did not state how long he sawed logs after taking employment with that company before he took the employment of log scaler, but he never did testify, as we read this record, that he was unable, by reason of his injuries, to perform the duties of log sawyer, or that his services in that connection were unsatisfactory to his employer, nor does his testimony indicate, by circumstances or otherwise, that his services in any capacity at any time for any employer since his injuries have been unsatisfactory, or that he has been unable to procure or hold employment of any nature that he has offered himself to perform since his injuries. He did testify that the wages received by him from the Long-Bell Lumber Company since he commenced working for that company in August, 1924, were $3.85 per day whereas he was earning only $3.50 per day at the time he was injured and performing the duties of loading logs, and that in addition to the regular wage of $3.85 per day, he is also now receiving a 10 per cent. bonus, making about $4.23 a day wages, whereas before the injury he was not receiving in excess of $3.50 per day.

The medical testimony in this case, and there were several doctors on both sides, shows beyond any reasonable doubt or any contradiction that appellee's incapacity to labor is not permanent and total. We shall not go into the evidence of these physicians, because all of them, with the exception of that of Dr. T. H. Tucker, shows that appellee's incapacity because of the injuries complained of could not exceed 50 per cent., and that of Dr. Tucker, as we read it, shows that his incapacity to labor does not exceed 75 per cent.

Such being the state of the evidence, it becomes our duty to reverse this judgment, based upon the jury's finding that appellee was totally and permanently incapacitated to labor.

[2] The expression "total incapacity," as used in the Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246 —1 et seq.) means that one must be so injured that he becomes disqualified from performing the usual tasks of a workmen to such extent that he cannot procure and retain employment. Home Life & Accident Co. v. Corsey (Tex. Civ. App.) 216 S. W. 467; Moore v. Peet Bros., 162 P. 295, 99 Kan. 443; Bish-op v. Millers' Indemnity Underwriters (Tex. Civ. App.) 254 S. W. 411; Cone v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 251 S. W. 262; Western Indemnity Co. v. Corder (Tex. Civ. App.) 249 S. W. 316.

[3] Upon the trial of this case in the district court, Hon. V. E. Middlebrook, counsel for the appellee, took the stand as a witness, and offered to testify that on the evening before he had caused Dr. Nelson to make an X-ray picture of appellee's injured leg and ankle, and these X-ray pictures, as made by Dr. Nelson, were offered in evidence on the trial and exhibited to the jury, showing the condition of the broken leg, the extent of its healing, etc. Counsel for appellant objected to the admission of these X-ray pictures in evidence without it being shown that they were correctly made, and by a skillful person in that line, whereupon, stating the bill in substance, Judge Middlebrook stated that he was present when these X-ray pictures were made by Dr. Nelson, and saw Dr. Nelson make them, and went into detail in the matter, and that he knew that Dr. Nelson had made correct pictures of appellee's broken leg and ankle, and that Dr. Nelson was competent to make correct pictures, and that he was properly equipped as a physician and surgeon to make correct X-ray pictures. Counsel for appellant still objected to the introduction of the pictures and the testimony of Judge Middlebrook, on the ground that he was not shown to be qualified to testify that these X-ray pictures were correctly made, and that Dr. Nelson was a competent physician and surgeon to make them, and that he was properly equipped, as a physician and surgeon, with the necessary machinery to make them, whereupon the court overruled the objection of counsel for appellant and permitted the pictures to be introduced in evidence upon the testimony of Judge Middlebrook as to their correctness, etc. This was error, and upon a very vital point in this case. We have been cited to no authority by counsel for appellee in his brief that sustains the ruling of the court on this point. We are unable to say how Judge Middlebrook would be a competent witness to testify as to a matter of professional and surgical skill of this kind, or how he would be expected to know whether Dr. Nelson was a competent man to use the scientific methods of taking this character of pictures, and to know that he was properly equipped for such business, and, there being nothing in the record in this case to indicate how Judge Middlebrook could know these facts, we must hold that the objection to the testimony on this point ought to have been sustained. As an interesting discussion by the Supreme Court of Tennessee in this connection, see Bruce v. Beall, 41 S. W. 445, 99 Tenn. 303, and authorities there cited. See, also, H. & T. C. R. Co. v. Shapard, 118 S. W. 596, 54

Tex. Civ. App. 596, and authorities there cited.

We are not unfamiliar with the contention made by able counsel for appellant before this court that the evidence in this case showed that the appellee, at the time he was injured, was not an employé of the Collwood Lumber Company, as alleged by him, but that, on the contrary, he was an employé of Flournoy and Ryan, who were independent contractors loading logs under an independent contract for the Collwood Lumber Company, and, therefore, the court should have peremptorily instructed the verdict in this case in favor of appellant, because of the variance between the allegations and proof. After reading this record very carefully, we have concluded that there is nothing in this contention. We think that the evidence in this case shows, beyond controversy, that the appellee was an employé of the Collwood Lumber Company, in contemplation of the Employers' Liability Act of this state, and that Flournoy and Ryan themselves were employés of the Collwood Lumber Company, and not independent contractors. Our views as to the distinction between an independent contractor and an employé, under the Employers' Liability Act of this state, have been fully expressed in the case of Maryland Casualty Co. v. Kent (Tex. Civ. App.) 271 S. W. 929, and authorities there cited.

It is very probable that all other matters complained of in the brief of counsel for appellant will not arise upon another trial, and we pretermit any discussion of them for that reason.

For the errors pointed out, it is our order that the trial court's judgment be reversed and the cause remanded for another trial, in accordance with these views.