TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,

v.

Jack D. VINEYARD, Appellee.

No. 15447.

Court of Civil Appeals of Texas.

Dallas.

July 11, 1958.

Rehearing Denied Oct. 3, 1958.

Burford, Ryburn & Ford; Logan Ford and Clarence A. Guittard, Dallas, for appellant.

Caldwell, Baker & Jordan, and Ken R. Davey, Dallas, for appellee.

DIXON, Chief Justice.

This litigation began April 5, 1951, when appellee Vineyard brought suit to set aside a workmen's compensation settlement agreement previously entered into with appellant insurance carrier regarding injuries sustained by appellee August 10, 1949. A directed verdict in favor of the insurance company was reversed on appeal. Vineyard v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 263 S.W.2d 675.

In a second trial a jury verdict was favorable to appellee Vineyard and judgment was rendered setting aside the settlement agreement. This judgment was affirmed on appeal. In this second trial the jury found that appellee had suffered 50% partial permanent incapacity as a result of the accident. However this finding was not conclusive of the litigation, the appellate court holding that since the suit was brought for the purpose of setting aside the settlement agreement, the trial court had no jurisdiction to pass upon a claim for compensation, or render judgment for compensation. Texas Employers' Ins. Ass'n v. Vineyard, Tex.Civ.App., 296 S.W.2d 588.

In a third trial the jury found that appellee Vineyard had suffered total permanent incapacity as a result of the accident, and judgment based on the jury verdict was rendered in favor of appellee for $11,-358.72. The present appeal stems from said judgment.

Appellant in its first two points on appeal says that (1) there is no evidence to support the finding of total permanent incapacity, or (2), in the alternative, such finding is so clearly contrary to the overwhelming weight and preponderance of the evidence that it is manifestly wrong and unjust. The nature of these two points requires us to present a summary of the evidence bearing on the extent of appellee's injury.

### Facts.

Appellee was 18 years old when he was injured in the summer of 1949. He had worked each summer since he was 12 years of age, picking cotton, doing other farm work, carrying groceries in a grocery store and performing the same kind of work in a warehouse. He moved with his family to Bells, Texas, when he was not yet 16 years of age. For about two and half years he was employed on Saturdays and after school working in a service station and a pickle factory. He played on the football team at Bells High School.

On August 10, 1949, he was working at the Fant Milling Company, at Sherman, Texas. Among his tasks was the wheeling of one hundred pound sacks of feed from a sacking machine to a warehouse by means of a two-wheeled truck. Each truck load

would consist of six sacks weighing a total of 600 pounds. In the warehouse he would stack the sacks in a storage space from five to six sacks high. On one occasion while lifting a sack of feed to put it on top of a stack a severe pain hit him in the lower part of his back. He finished out the day on a different job. The next day he tried to work but the pain hit him again, and he was sent to a doctor. The third day he quit his job because of the pain.

It is to the record of subsequent events that we mainly must look to determine whether the evidence will support the jury's finding of total permanent incapacity. Appellee tried to play football again in the fall of 1949 but after two games he made no further effort to play because of the pain in his back. He went to see Dr. Charles Donaghey, his family physician. Dr. Donaghey sent him to Dr. Felix Butte, who in July 1950 did a spinal fusion operation on his back. For sometime after the operation he wore a brace.

Meantime appellee continued in school, graduating from High School in the spring of 1950. In October 1950 he married, and his first child was born July 31, 1951. On January 29, 1951 he took a job with Sherman Auto Parts, working as a counterman. His job was to take orders from customers, look up items in the catalogue, go back to the shelving, and bring out the parts. If the item was large and heavy there was another boy he could call on to carry it for him. He worked eight hours a day, six days a week. The work required him to be on his feet part of the time. He went to work for Sherman Auto Parts at 75 cents per hour. (At Fant Milling Company at the time of his injury he was making $1.03 per hour.) After working something more than a year his pay was raised to 85 cents per hour.

In August 1952 appellee took a better paying job with Automotive, Inc., at Sherman, Texas, doing the same kind of work. In his new job he was head counterman. He continued in that position at Sherman from August 1952 until June 1957, when he was promoted and sent to a larger and newer store at Oklahoma City. In Oklahoma City appellee worked eight and a half hours a day for five days a week and until one o'clock on Saturdays.

When appellee started working for Automotive, Inc., in August 1952 he was paid $1.05 an hour. From time to time he received raises in pay to $1.10, $1.15 and $1.25 per hour. When he was transferred to Oklahoma City his pay was raised to $1.40 per hour. At the time of the trial he was working forty hours a week at $1.40 per hour, and eight hours at time and a half, and making a total of $68 or $69 per week.

There is no testimony that appellee has lost any time from his work during the period of nearly seven years from January 29, 1951 until the time of the trial in October 1957. His employers knew of his back condition and did not assign him to tasks calling for heavy lifting. The duties of his employment required only light lifting. Appellee testified that he could have obtained employment at better pay if he could have done heavy lifting. He testified also that he still has a certain amount of pain, more severe at some times than at others. Sometimes his left leg gets numb. At times after a hard day's work his back bothers him, and that night he has difficulty sleeping. He thinks his trouble is increasing as he gets older.

Malcolm R. Walker, owner of Sherman Auto Parts Company, testified that when appellee first came to work for him in January 1951, he was employed as delivery boy. His job was to deliver bulk pieces and parts to customers in a pick-up truck. He performed this work satisfactorily for about six months, when he was made a counterman inside the store. There was no arrangement whereby appellee did only part of the work, or light work. There was no part of the work he was unable to do, either as delivery boy or counterman. The work was not strenuous, but it took stami-

na to stay on one's feet doing the job. Appellee quit voluntarily. He was considered a "good employee with potentials".

E. W. Wilson, manager of Automotive, Inc., at Sherman was called as a witness. He testified that appellee worked for him from August 1952 to June 1957. He was an experienced able employee who performed his duties in a satisfactory manner. His employers knew of his back injury and he was not required to do heavy lifting. His back problem did not interfere with his obtaining or retaining his employment with Automotive, Inc. He received three raises in pay while at Sherman and another when he was promoted and transferred to Oklahoma City. Appellee is permanently employed with Automotive, Inc., and is considered a valuable employee. However there are lots of jobs appellee could not hold down because of his back condition—those requiring heavy lifting.

Dr. Donaghey, appellee's family physician was introduced as a witness by appellant. He testified that appellee has a stiff back in the lumbar region, that being the purpose of the operation performed on his back; and he would be unable to perform duties that would require a flexing of the lower joints of the lumbar area of his back. Appellee also has a forward slipping of the fifth lumbar vertebrae, which Dr. Donaghey testified was a congenital situation.

Dr. Butte, who performed the operation on appellee, said that appellee could have an impingement and irritation of the nerves in his lower back, and if there was an impingement it would produce pain down into the leg. Dr. Butte testified that appellee has fifteen to twenty per cent disability.

Dr. Max Goodfried, appellee's medical witness, testified that a week before the trial appellee had weakness of some of the muscles of his right leg, and a tenderness in the socrosciatic notch and also over the area between the 2nd and 4th lumbar vertebrae. There was ¾ of an inch atrophy in the left thigh and ⅜ of an inch in the calf of the left leg. Appellee did not perform the orthopedic tests as well as a normal person. The test produced pain along the sciatic nerve. Appellee at the time of the examination by the Doctor, still had a seventy-five per cent displacement of the 5th lumbar vertebrae upon the sacrum. The condition of his back resulted in two of the spinous processes rubbing against each other, causing irritation and pain.

## Opinion

■ Our Supreme Court has approved the following definition of total incapacity:

"The term 'total incapacity' (or total disability), as used in this charge, does not imply any absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman, in such a way as to enable him to procure and retain employment, is regarded as being totally incapacitated, or totally disabled." Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S. W.2d 1000, 1001.

■ Our Supreme Court has approved the following definition of partial incapacity:

"The term, 'partial incapacity,' as used herein has the following meaning: it shall mean where an employee by reason of injury sustained in the course of his employment is only able to perform part of the usual tasks of a workman, but, nevertheless, is able to procure and retain employment reasonably suitable to his physical condition and ability to work, or is only able to perform labor of a less remunerative class than he performed prior to his injury whereby he suffers a depression or reduction in his earning capacity." Southern Underwriters v. Schoolcraft, 138 Tex. 323, 158 S.W. 2d 991, 994.

Our Supreme Court has *disapproved* this definition of total incapacity:

"By the term of 'total incapacity' as used in this charge, does not imply an absolute disability to perform any kind of labor, but is such disability as disqualified a person from performing the usual tasks of a workman in such a way as to prevent him from procuring and retaining employment *in the usual occupation which he is suited to perform.*"

Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000, 1001 (Syl. 2), supra. It was the italicized language which the Supreme Court held to be error. The Court held that the term total incapacity implies disability to perform the usual tasks of a workman, but does not imply disability to perform the usual tasks of any one particular trade or occupation.

In the light of the above holdings by our Supreme Court, we cannot escape the conclusion that the jury finding of total permanent incapacity in this case was contrary to the overwhelming weight and preponderance of the evidence. The testimony is convincing that appellee Vineyard had suffered permanent partial incapacity and that he cannot now perform heavy lifting such as he was performing when he was injured. Appellant concedes as much. But the evidence shows that his condition does not 'and has not prevented him from obtaining and retaining permanent and lucrative employment calling for lighter lifting duties than his former employment, which lighter duties he is able to perform full time, permanently and ably. Certainly it seems to us that the evidence is insufficient to uphold a finding of total permanent incapacity. See also Texas Employers' Ins. Ass'n v. English, Tex.Civ. App., 278 S.W.2d 460; Texas Employers' Ins. Ass'n v. Norton, Tex.Civ.App., 278 S.W.2d 287; Texas Employers' Ins. Ass'n v. Moran, Tex.Civ.App., 261 S.W.2d 855, 859; American General Ins. Co. v. Amer-

son, Tex.Civ.App., 187 S.W.2d 912 (Syl. 8); Texas Employers' Ins. Ass'n v. Booth, Tex. Civ.App., 113 S.W.2d 231, 235; Lumbermen's Reciprocal Ass'n v. Wells, Tex.Civ. App., 283 S.W. 208.

Appellant's first point is overruled; the second point is sustained.

Appellant has presented several points on appeal dealing with alleged procedural errors. As we have decided that this judgment must be reversed because of the insufficiency of the evidence to support a finding of total permanent incapacity, we shall not pass on the other points on appeal, since they have to do with situations which probably will not arise in another trial.

The judgment of the trial court is reversed and the cause remanded for another trial.

Reversed and remanded.