TEXAS EMPLOYERS' INSURANCE ASSO-
CIATION, Appellant,

v.

Arthur R. CHAPPELL, Appellee.

No. 712.

Court of Civil Appeals of Texas,
Corpus Christi.

Oct. 26, 1972.

Rehearing Denied Nov. 30, 1972.

Dyer, Redford, Burnett, Wray, Woolsey & Dunham, James W. Wray, Jr., Corpus Christi, for appellant.

Edwards & DeAnda, William R. Edwards, Philip Maxwell, Corpus Christi, for appellee.

OPINION

BISSETT, Justice.

This is a workmen's compensation case. The jury, among other findings, found that the plaintiff, Arthur R. Chappell, hereinafter called appellee, was totally and permanently disabled as a result of an injury sustained by him on November 29, 1962, that such total incapacity commenced on May 23, 1963, that the injury suffered by him on November 29, 1962 was a producing cause of such incapacity, that the injury of June 11, 1969 did not contribute to such incapacity, and that the reasonable costs of medical services reasonably required by him in the treatment of his injury, and not theretofore paid by Texas Employers' Insurance Association, were $3,726.75. Judgment allowing a recovery of $19,082.52 ($15,355.77 lump sum for compensation benefits from November 29, 1962 to October 10, 1971 and $3,726.75 for medical services that accrued subsequent to June 11,

1969) was rendered on the verdict. We affirm.

Texas Employers' Insurance Association, hereinafter sometimes called appellant and sometimes called "TEIA", in its first two points, challenges the jury findings that the appellee was totally disabled. Complaint is made that such findings are so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust. We, therefore, review all the evidence in the record.

Appellee was employed by United Carbon Company (later known as Ashland Oil and Chemical Company) in March, 1944 as a "black puller". His duties required pulling carbon black from a spout lever into sacks, stacking these sacks on a buggy, and pulling the buggy to the warehouse. The job involved heavy lifting and climbing. He held this job until sometime in 1955, when he injured his leg.

Appellee was unable to work for about a year following his 1955 leg injury. When he did return to work it was for the same employer, United Carbon Company. He did not return to the "black puller" work he had been doing previous to his leg injury, but was assigned to work in the bathhouse, which work did not require heavy lifting or climbing. This work involved mopping floors, carrying bags of soiled work clothes from the employees' lockers to the laundry in the bathhouse, laundering the clothes, and performing other services in the bathhouse of a janitorial nature. Such duty was considered by his employer to be light duty and was assigned to "people that can't perform all the duties required in the rest of the plant". He worked at this job a steady eight hours per day, ten days on and four days off.

On November 29, 1962, appellee, while working in the bathhouse, slipped and fell, hitting his head and shoulder on the side of a door as he went down. He was first treated by Dr. Draper, the company doctor and his family doctor. Dr. Draper sent him to the hospital and called in Dr. Up-

shaw, an orthopedic surgeon, who concluded that appellee had sustained a lumbosacral intervertebral protrusion and an acute cervical strain. Dr. Upshaw operated to remove the protruding disc and to fuse the spine from the fourth lumbar to the sacral.

Appellee returned to his job on May 23, 1963, where he worked steadily until June 11, 1969. He testified that while reaching over to pick up some laundry, he experienced extreme pain from his back to the top of his head. He was hospitalized and Dr. Wilk, an orthopedic surgeon, diagnosed a ruptured disc in his neck. A neck fusion operation was performed. It was not successful. Appellee did not return to work after June 11, 1969.

Appellee was illiterate in that he could not read or write, although he could sign his name. He testified that upon his return to work in May, 1963 for the same employer and while he performed the same duties in the bathhouse that he had previously performed, he suffered pain all the time in his "head, neck, shoulder and arms". He took aspirin "all the time". When he went home from work, he would take a hot bath and go straight to bed, because "I was give out". He had trouble getting out of bed in the mornings because of "muscle spasms" in his back and left leg. When asked about his problems in performing his duties, he replied: "I just hurt sometime and I would have to lay down on a bench awhile", and "I didn't have any grip in my hand. Shoulder and head hurt all the time". He was asked: "Did you have anything like that before you fell in 1962?"; he answered: "No, sir". Appellee stated that he did not know how to do any work that did not require the use of his back and arms. He further testified that he really did not feel like going back to work after his 1962 injury and that he should have consulted his doctor about his continuing difficulties, but that he had to work as there was no way for him to support himself and his family on $35.00 per week because of his wife's health. Appellee's wife was not employed outside the home and had psychiatric problems that caused her to enter the hospital about once a year. Her condition, however, was not of any great concern to appellee.

Mr. Pitts, appellee's supervisor, testified that he did not note any difference in the way or manner that appellee performed his duties after the 1962 injury from his performance before that incident. However, he did not see appellee but once every week or so when he made periodic checks of the bathhouse. He did not know of appellee's problems, but he did say that if appellee had not been working for Ashland Chemical at the time of his injury in 1962 that he would not have been hired to work in the bathhouse following his back operation in 1963. He also testified that his company did not, as a general rule, hire anyone over thirty. Appellee was about fifty-two years of age in 1963.

Dr. Upshaw testified (a) that in April, 1963, appellee was still complaining of pain in his neck and on into his left shoulder; (b) the cervical strain he (Dr. Upshaw) diagnosed in 1962 could be a "contributing cause" to appellee's present incapacity, although he diagnosed degenerative arthritis in appellee's neck upon examination of x-rays that were taken subsequent to June 11, 1969; (c) an injury to the neck can cause pain in the shoulder; (d) the mere fact that a man uses his neck in his work does not mean that it does not hurt him; (e) appellee had a certain "residual", "persistent" and "permanent" disability caused by his lower back condition, limited motion because of the fused joints, and muscular weakness in the low back region; (f) that the limited motion in the low back caused by the fusion increased the stress and degeneration of the spine above the fusion; and (g) that from a medical standpoint it would be better for a man with a lumbosacral fusion and an acute cervical strain not to perform any work involving repetitive lifting, stooping, or twisting. He further testified that a number of companies would not hire a man in appellee's physical

condition as it existed in April, 1963, when he cleared appellee as being able to go back to work. He concluded that in view of appellee's complaints and of his (Dr. Upshaw's) objective findings, that appellee's consideration of retirement following the 1969 injury was probably a good one.

Dr. Wilk stated that appellee did not give him a history of any neck problem when he first examined him following the 1969 injury, nor did he complain of soreness in his neck during the initial examination. The x-rays of October, 1969 showed a degeneration in the neck spinal area, which, according to Dr. Wilk, could have been caused by either an injury or by old age. Appellee was referred to Dr. Norstrum who performed a spina myelogram which revealed external pressure on the spinal canal. Dr. Wilk further testified (a) that plaintiff's low back problems probably began in 1962 when he was injured; (b) that the back condition was probably "reexacerbated" by the 1969 injury, although the 1962 injury was the most important factor contributing to this condition; (c) that there was nothing in the history given him by appellee to indicate that the 1969 injury contributed in any way to the condition in which he found appellee's neck in October, 1969; and (d) that assuming a diagnosis of acute cervical strain in 1962, that this condition could have contributed to the neck condition in 1969. He described the neck fusion operated as a failure, said that appellee was permanently disabled from doing most anything, and, further, that there was nothing more that he could do to help him.

■ In a workmen's compensation case, the rule seems to be that where it can reasonably be inferred from the evidence that the claimant's injuries are permanent and totally disable him from performing his usual task as a workman in such a way as to enable him to obtain and retain employment, a verdict in his favor on the issue of total and permanent disability will be affirmed. Texas Employers' Ins. Assn.

v. Mallard, 143 Tex. 77, 182 S.W.2d 1000 (1944); Traders & General Ins. Co. v. Daniel, 131 S.W.2d 276 (Tex.Civ.App.— El Paso 1939, writ dism'd, judg. corr.); Liberty Mutual Insurance Company v. Parrish, 469 S.W.2d 620 (Tex.Civ.App.—Waco 1971, n. w. h.); Texas Employers Insurance Association v. Smith, 374 S.W.2d 287 (Tex.Civ.App.—Beaumont 1963, n. w. h.).

■ Any doubt as to whether the evidence supports the jury finding of total and permanent disability must be resolved in favor of the injured workman. Bailey v. American General Insurance Company, 154 Tex. 430, 279 S.W.2d 315, 318 (1955); Hargrove v. Trinity Universal Ins. Co., 152 Tex. 243, 256 S.W.2d 73 (1953).

Appellant, in support of its position, relies heavily upon Texas Employers' Ins. Ass'n v. Moran, 261 S.W.2d 855 (Tex.Civ. App.—Eastland 1953, writ dism'd); Texas Employers' Ins. Ass'n v. Vineyard, 316 S.W.2d 156 (Tex.Civ.App.—Dallas 1958, n. w. h.), and Fidelity & Casualty Company of New York v. Burrows, 404 S.W.2d 353 (Tex.Civ.App.—San Antonio 1966, writ ref'd n. r. e.). These cases are distinguishable on the facts from the instant case.

In *Moran* and *Vineyard*, the injured workman had been able to *obtain* and *retain* employment after he was injured. Here, appellee stayed on the job with the same employer and therefore had not passed a pre-employment examination for a new employer. The testimony of Dr. Upshaw, Dr. Wilk, Mr. Pitts and of appellee raised an issue as to whether appellee was able to *obtain* employment subsequent to his 1962 injury.

In *Burrows*, the plaintiff was a single man who was living with his parents. The court found that there was no evidence of hardship that would compel him to work in spite of incapacity. In the case at bar, the appellee had to support a wife (who required psychiatric treatment in a hospital about once a year) and at least one minor child. The evidence shows that appellee

was economically compelled to work despite his pain and incapacity in order to take care of himself and his family. See Consolidated Underwriters v. Whittaker, 413 S.W.2d 709 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.); Texas Employers' Ins. Association v. Price, 336 S.W.2d 304 (Tex. Civ.App.—Eastland 1960, n. w. h.).

■■ The questions of extent of the injury and duration of the incapacity of an injured person can never be answered precisely. Angelina Casualty Company v. Spencer, 310 S.W.2d 682 (Tex.Civ.App.— Beaumont 1958, writ ref'd n. r. e.). There is no set rule for measuring or determining the degree of incapacity of an injured workman. It is the province of the jury to decide these issues from all the facts in evidence.

■ In our opinion there is ample evidence of probative force to support the findings of the jury that appellee sustained total and permanent incapacity by reason of his injury of November 29, 1962. Any inconsistencies or conflicts in the testimony were resolved by the jury in appellee's favor, as was its privilege. After reviewing the entire record and considering the evidence which supports the jury findings complained of by appellant and also that which is contrary thereto, we hold that such findings are not against the overwhelming weight and preponderance of the evidence as to be manifesly unjust under the rule laid down by In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951). Appellant's first two points are overruled.

Appellant, by points three to six, challenges the award to appellee of $3,726.75 for medical expenses. It contends that it was not responsible for the payment of such medical expenses, because it was not notified subsequent to June 11, 1969 of the necessity for medical treatment by reason of the injury of November 29, 1962, that such medical bills were incurred after it was so notified, that such an award constituted double recovery to appellee, and that as all such medical bills were either paid or guaranteed by Insurance Company of North America, this suit is against public policy as it was instituted for the benefit of that company and not for the benefit of appellee. We do not agree.

The parties stipulated that $3,726.75 in medical services had been furnished appellee since June 11, 1969, and that said services were reasonably worth that amount of money. The jury found that $3,726.75 was the reasonable cost of medical services reasonably required by appellee resulting from his injury of November 29, 1962, and not theretofore paid by appellant.

At some time between May 23, 1963 and June 11, 1969, United Carbon Company became Ashland Chemical Company, and acquired a new workmen's compensation carrier, Insurance Company of North America, hereinafter called "INA". It paid weekly compensation to appellee subsequent to June 11, 1969 in the aggregate amount of $1,156.00. INA also paid appellee an additional sum of $12,500.00 in settlement of his workmen's compensation claim, and under the settlement agreement it was agreed that appellee would be entitled to an additional sum of $1,000.00, conditioned upon his making and pursuing to trial a claim against TEIA for workmen's compensation benefits. It was also agreed by and between appellee and INA that medical services were furnished appellee subsequent to June 11, 1969 in the amount of $3,726.75, and that of this sum $971.20 was paid by INA, and that INA was obligated to pay the remainder of these medical expenses ($2,755.55) in the event the same were not recovered by appellee in his suit against TEIA.

■ Appellant says that it was not notified, as required by Section 7, Article 8306, Vernon's Ann.Civ.St., that the appellee "was in need of medical attention following the incident of June 11, 1969, until sometime after November 6, 1969". The only notice required by that section of the statute, in order to give rise to

the insurance carrier's duty to provide reasonable and necessary medical services to the injured workman, is notice of injury. Neither specific notice of a claim for medical services nor a request therefor is required as a condition of the carrier's responsibility. Texas Employers' Ins. Ass'n v. Steadman, 415 S.W.2d 211 (Tex.Civ.App.—Amarillo 1967, writ ref'd n. r. e.); Standard Fire Insurance Company v. Simon, 474 S.W.2d 530 (Tex.Civ. App.—Dallas 1971, n. w. h.); Trinity Universal Insurance Company v. Farley, 408 S.W.2d 776 (Tex.Civ.App.—Tyler 1966, n. w. h.). In this case, the record clearly shows that appellant was the compensation carrier for appellee's employer on November 29, 1962, and had notice of appellee's 1962 injury to both his back and neck. Therefore, under the provision of Section 7 of the statute and the decisions construing it, appellant was required to furnish appellee all reasonable and necessary medical care for the 1962 injury. As appellant's liability for medical services arose out of appellee's 1962 injury and it being undisputed that appellant did have timely notice of that injury, appellant's refusal to pay for the medical bills that were incurred subsequent to the incident of June 11, 1969 cannot be excused on the ground that it was not then notified that appellee needed medical treatment.

■ Appellant also says that it is not liable for such medical services because there is no evidence that it (TEIA) refused, failed or neglected to furnish appellee medical care and treatment after June 11, 1969. It relies on Few v. Charter Oak Fire Insurance Company, 463 S.W.2d 424 (Tex.Sup.1971) and Liberty Universal Insurance Company v. Gill, 401 S.W.2d 339 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.). Neither case is in point. In each of the cited cases the claimant changed doctors while still under the care of the doctor furnished by the carrier. In *Few,* the change was made without the carrier's consent. In *Gill,* the carrier furnished medical care whenever requested to do so and the doctor furnished by the carrier never refused to see or treat the injured person. In this case, the appellee did not change doctors; he was treated in 1969 by the same Dr. Draper and Dr. Upshaw who treated him in 1962; appellee was referred to Dr. Wilk by Dr. Draper in 1969. All of these doctors treated appellee at the behest of his employer. In *Few* and *Gill,* the carrier stood ready and willing to provide the claimant with all reasonably required medical services, whereas, in the case before us, the carrier at the time of the injury in 1962 has refused to pay medical bills that were required after June 11, 1969.

■ Appellant further contends that it is not liable for such medical services because no issue was submitted which inquired into TEIA's refusal, failure or neglect to furnish such medical services. Since appellant's refusal, failure or neglect to provide medical services incurred by appellee after June 11, 1969 was conclusively established by the evidence, no error was committed by the trial court in refusing to submit an issue on that point. Aetna Casualty & Surety Company v. Jennusa, 469 S.W.2d 423 (Tex.Civ.App.—Beaumont 1971, n. w. h.); Harleysville Mutual Insurance Company v. Frierson, 455 S.W.2d 370 (Tex.Civ.App.—Houston 14th 1970, n. w. h.); Texas Employers' Insurance Ass'n v. Steadman, supra; Saint Paul Mercury Indemnity Co. v. Tarver, 272 S.W.2d 795 (Tex.Civ.App.—Eastland 1954, writ ref'd n. r. e.); Texas Employers' Ins. Ass'n v. Hierholzer, 207 S.W.2d 178 (Tex.Civ.App.—Austin 1947, writ ref'd n. r. e.). Furthermore, Mr. R. M. Boerum, Jr., a claims coordinator for appellant, stated that TEIA would have refused appellee medical treatment on June 11, 1969 and on November 6, 1969, even if a specific request therefor had been made by appellee.

Appellant also argues the force and effect of Pacific Employers Insurance Company v. Jones, 416 S.W.2d 583 (Tev.Civ.App.—Eastland 1967, writ ref'd n. r. e.). That case is not applicable to the case at bar because it involved a subsequent injury

which contributed 40% to the injured workman's incapacity. Here, the jury found that the injury of June 11, 1969 did not contribute to appellee's incapacity. See St. Paul Fire & Marine Insurance Co. v. Murphree, 163 Tex. 534, 357 S.W.2d 744, 748 (Tex.Sup.1962).

■■ In addition to the preceding contentions advanced by appellant, the assertion is made that appellee "himself was neither responsible for those medical bills nor did he actually pay those medical bills himself", and that under the circumstances the judgment rendered permits appellee "a double recovery, which is clearly opposed to the intention of the Texas Workmen's Compensation Act". We have not found a case involving two compensation carriers comparable to the fact situation presented by this appeal. But, Black v. American Bankers Insurance Company, 478 S.W.2d 434 (Tex.Sup.1972) is most persuasive. In that case the hospitalization insurance company sought to avoid liability for all medical expenses of the insured (Black) that were actually paid by Medicare, contending that these particular expenses were not "actually incurred" by the insured under the terms of the policy. The Supreme Court rejected such contention. It held:

"... Further, as a matter of law, we hold that when plaintiff entered the hospital and received its services, there was created an implied contract to pay for same, and he was liable therefor until he or someone else paid the bill. The fact that his action created a derivative obligation on the part of one or more third parties to pay the hospital, or to reimburse him, did not affect his obligation under the implied contract between him and the hospital. If these derivative obligors had failed to pay, the hospital would have had a legal claim against plaintiff. ..."

\*  \*  \*  \*  \*  \*

"Therefore, we hold that plaintiff 'actually incurred' the hospital expenses in question even though they were eventually paid on his behalf by Medicare. As between plaintiff and defendant, the result is the same as if another of plaintiff's insurers had obligated itself to pay, and did pay, the expenses direct to the hospital. ..."

In American Indemnity Company v. Olesijuk, 353 S.W.2d 71 (Tex.Civ.App.— San Antonio 1961, writ dism'd) and Republic Bankers Life Insurance Co. v. Anglin, 433 S.W.2d 795 (Tex.Civ.App.— Texarkana 1968, n. w. h.), both cited by the Supreme Court in *Black*, each Court of Civil Appeals held that the hospitalization insurance carrier was liable for the coverage due under its contract even though the carrier argued that the insured incurred no expense or that a third party had responsibility for such coverage. In *Olesijuk*, the injured was a member of the U. S. Navy and the Secretary of the Navy, under appropriate regulations, reimbursed him for the expenses incurred. The Court held that in spite of the reimbursement, Olesijuk had incurred expenses and consequently the carrier owed him coverage under the contract. In *Anglin*, the insured (Anglin) was injured at work and was furnished medical treatment. The possibility of workmen's compensation coverage had not been litigated at the time of the suit. Additional to possible compensation benefits, Anglin had hospitalization insurance coverage. The Court held that the argument that Anglin "suffered no loss because he had not paid the hospital charges at trial time, or that the compensation carrier was, or probably would be, liable" avoids the issue.

In the instant case, when appellee accepted the medical services in issue, he became primarily responsible to pay for them. That there might have been a derivative liability on the part of INA to pay these bills or that they were either paid or guaranteed by INA is immaterial to the issue of TEIA's statutory liability therefor. Appellant's points three to six, both inclusive, are overruled.

■■ Point seven was not briefed. It is considered as waived and is therefore over-

ruled. Roberts v. K-Mart Foods, Inc., 470 S.W.2d 751 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e.) ; Employers' Nat. Life Ins. Co. of Dallas, Tex. v. Willits, 436 S.W.2d 918 (Tex.Civ.App.—Amarillo 1969, writ ref'd n. r. e.).

The judgment of the trial court is affirmed.

SHARPE, Justice (concurring in part and dissenting in part).

I reluctantly concur in affirmance of that portion of the trial court judgment which provides as follows:

"(2) That Plaintiff, Arthur R. Chappell, do have and recover judgment against Texas Employers Insurance Association for workmen's compensation benefits in the lump sum of Fifteen Thousand Three Hundred Fifty-Five Dollars Seventy Seven Cents ($15,355.77), which is the amount of compensation at the rate of Thirty-Five Dollars ($35.00) per week for a period of four hundred one (401) weeks, commencing November 29, 1962, together with interest thereon as provided by law for accrued payments through October 10, 1971, and with due allowance for compensation for twenty-four (24) weeks, six (6) days, at the rate of Thirty-Five Dollars ($35.00) per week, totalling Eight Hundred Seventy ($870.-00) Dollars."

However, I respectfully dissent as to that portion of the judgment which provides as follows:

"(3) That the Plaintiff recover judgment against Texas Employers Insurance Association for medical expenses in the amount of $3,726.75."

I would sustain appellant's points 3, 4, 5 and 6 reading as follows:

"POINT THREE

"The Court erred in awarding plaintiff judgment for $3726.75 in medical expense, it being undisputed that the plaintiff had not paid any part of such medical expenses, was not responsible for the payment of such medical expenses, and that the payment of such medical expenses had been guaranteed by Insurance Company of North America.

POINT FOUR

The error of the Court in awarding recovery for medical bills in absence of a finding by the jury that Texas Employers' Insurance Association had been made aware of the necessity for medical treatment by reason of the injury of November 29, 1962, at a time prior to the incurring of such medical bills, and a jury finding that Texas Employers' Insurance Association had refused, failed or neglected to furnish such treatment.

POINT FIVE

The Court erred in entering judgment for the plaintiff for medical bills in the amount of $3726.75 in absence of a jury finding that such medical expenses were incurred subsequent to the date upon which Texas Employers' Insurance Association was made aware of the plaintiff's necessity for medical treatment.

POINT SIX

The Court erred in entering judgment for the plaintiff for medical bills, the undisputed evidence being that all such medical expenses were either paid by the Insurance Company of North America or payment thereof had been guaranteed by the Insurance Company of North America, and by the terms of the plaintiff's agreement with the Insurance Company of North America this suit against Texas Employers' Insurance Association was instituted for the benefit of the Insurance Company of North America and not for the benefit of the plaintiff in contravention of public policy."

The evidence reflects that plaintiff-appellee worked for United Carbon Company, later known as Ashland Oil and Chemical Company, from March 1944 until June 11,

1969, except for two periods of time in 1955–1956 and 1962–1963 during which he was injured and recovering from injuries. After another injury on June 11, 1969 Chappell did not return to work.

Chappell was off work for more than a year following an injury in 1955. Before then he had worked as a "black puller" doing heavy work. When he returned to work in 1956, Chappell was assigned to lighter work in the bathhouse. Chappell suffered another injury on November 29, 1962. He first was sent to Dr. L. M. Draper who was Chappell's family doctor as well as his Employer's (Company) doctor. Dr. Draper referred Chappell to Dr. Upshaw who treated Chappell, including performance of an operation, from November 29, 1962 until April 23, 1963. Dr. Upshaw referred Chappell to Dr. Klotz, a neurosurgeon, for examination on April 5, 1963. Appellant, Texas Employers' Insurance Association, sometimes hereafter TEIA, was the insurance carrier for Chappell's employer in connection with his 1962 injury. On April 23, 1963, Dr. Upshaw released Chappell to return to work. Chappell then resumed work on the same job. TEIA closed its file and later ceased to be the Workmen's Compensation carrier for Chappell's employer.

In 1969, when Chappell suffered an injury, the workmen's compensation carrier for the employer (then Ashland Oil and Chemical Company) had been changed to Insurance Company of North America, sometimes hereafter referred to as INA. TEIA was not made aware of the incident of June 11, 1969 until November 6, 1969. On that date a representative of INA called a claims representative of TEIA and indicated that INA was furnishing medical treatment for Chappell and wanted to know if TEIA was interested in contributing.

The record reflects that Chappell filed an amended notice and claim for compensation with the Industrial Accident Board in connection with his injury of June 11, 1969, which reflected that the Employer's Liability Carrier was INA; that he was sent to a doctor and hospital by his employer or his insurance company. The name and address of the doctor was shown to be "Dr. L. M. Draper, Wilson Bldg., Corpus Christi, Texas."

The doctors who treated Chappell in 1969 did so for INA. Their reports were not addressed to TEIA. On May 22, 1970 Chappell and INA entered into a compromise-settlement agreement which was approved by the Industrial Accident Board on May 29, 1970. Medical expenses were covered as follows: Insurance Company of North America had paid medical expenses of $971.20 and had guaranteed medical expenses of $2755.55. Under the terms of the compromise-settlement agreement, Paragraph "(c)", page 2, Insurance Company of North America agreed not to look to the appellee for repayment of the $971.20 already paid in medical bills, even if the appellee should recover those in his suit against Texas Employers' Insurance Association. In other words, the appellee is under no obligation to pay that amount of medical bills and is under no obligation to repay INA for same. The award of the Industrial Accident Board and the compromise-settlement agreement between Chappell and INA were not admitted in evidence for the jury but only for consideration by the court. The action of the trial court in excluding such evidence was timely objected to by appellant.

It was agreed that medical treatment was rendered to Chappell subsequent to June 11, 1969, in the total sum of $3726.75, and of this amount $971.20 was paid by INA and by compromise-settlement agreement INA was also obligated to pay the remainder of these medical expenses which are not recovered by Chappell in his suit against TEIA.

The trial court entered judgment for Chappell which, among other things, allowed him to recover as against Texas Employers' Insurance Association the total sum of $3726.75, being the entire amount

of his medical expenses including that previously paid by INA and that portion which had been guaranteed by INA. The effect of this judgment is that Chappell recovers $971.20 in medical expenses which he did not pay and INA is relieved of its conditional obligation to pay the remaining $2755.55 in medical expenses.

Special Issue No. 14 was the only issue submitted by the Court concerning the cost of medical services. No issue was submitted which inquired as to notice being provided to Texas Employers' Insurance Association and no issue was submitted which inquired as to Texas Employers' Insurance Association's refusal, failure, or neglect to furnish such medical services. The trial court refused to submit issues concerning notice to TEIA or its failure to provide medical services in the face of proper objections to the charge complaining of the omission of those issues. TEIA provided medical services following Chappell's injury on November 29, 1962, until he returned to work on April 23, 1963. For a period of about six years Chappell required no further medical services. Then, on June 11, 1969, Chappell began to incur medical expense in a substantial amount without notice to TEIA and without giving it an opportunity to provide such medical services. The record shows that medical services were being provided Chappell and being paid for or guaranteed by INA.

Article 8306, Sec. 7, V.A.C.S., provides that:

" . . . The employee shall not be entitled to recover any amount expended or incurred by him for said medical aid, hospital services, nursing, chiropractic services, or medicines, nor shall any person who supplied the same be entitled to recover of the association therefor, unless the association or subscriber shall have had notice of injury and shall have refused, failed or neglected to furnish it or them within a reasonable time . . .."

The evidence presented in this case shows that TEIA was not notified that the plaintiff was in need of medical attention following the incident of June 11, 1969, until sometime after November 6, 1969, and then such notice was provided by a representative of INA. When notice was received by TEIA in November 1969, it was apparent that medical services were being provided for the plaintiff by INA, that such medical services had been provided by INA since July 11, 1969, and that INA intended to continue furnishing medical services to Chappell.

There is no jury finding that TEIA, after proper notice, refused, failed or neglected to furnish medical services or medical treatment to the plaintiff following the incident on June 11, 1969, nor is such refusal, failure or neglect conclusively established by the evidence. In fact, it would have been impossible for Texas Employers' Insurance Association to have refused to furnish medical services without notice of the necessity of the same.

Under the circumstances shown to exist here, I believe that it is unreasonable to charge TEIA with liability for expenses involved in the treatment of Chappell when it did not have notice of the incident of June 11, 1969, particularly after the lapse of six years from the time Chappell returned to work in 1963 and without any further request or notice from him to TEIA that he needed medical treatment for his injuries of November 29, 1962.

It also appears that there is no finding by the jury as to which of the bills incurred after June 11, 1969, either paid or unpaid, were incurred prior to November 6, 1969. I would hold that absent notice to TEIA before that date concerning such medical bills, TEIA cannot be held liable for such medical expenses under the terms of the Texas Workmen's Compensation Act. Even if it be assumed that TEIA failed to pay medical bills after notice, such assumption cannot be entertained as to the expenses incurred prior to November 6, 1969.

Appellant objected to the submission of Special Issue No. 14 specifically on these grounds. In order for appellee to carry his burden as to medical expenses in connection with his 1962 injury, an issue should have been submitted to the jury as to which bills were incurred prior to November 6, 1969, and which bills were incurred after that date. Without such a finding by the jury, it is impossible to determine what amount of medical expenses, if any, were incurred after the notice.

Appellant's position concerning its non-liability for medical expenses in this case is supported in principle by the cases of Few v. Charter Oak Fire Insurance Company, 463 S.W.2d 424 (Tex.Sup.1971); Liberty Universal Insurance Company v. Gill, 401 S.W.2d 339 (Tex.Civ.App., Houston 1st Dist.1966, wr. ref. n. r. e.); Travelers Insurance Company v. Garcia, 417 S.W.2d 630 (Tex.Civ.App., El Paso 1967, wr. ref. n. r. e.); Jones v. Pacific Employers Insurance Company, 416 S.W.2d 580 (Tex. Civ.App., Eastland 1967, wr. ref. n. r. e.).

It is apparent from the facts of the instant case that the judgment entered against Texas Employers' Insurance Association for $3,726.75 covering medical services rendered subsequent to June 11, 1969, causes a grave injustice. Those medical bills and medical services were either paid or guaranteed by the Insurance Company of North America, the subsequent insurance carrier for the same employer. The plaintiff himself ultimately was neither responsible for those medical bills nor did he actually pay those medical bills himself. To allow the plaintiff to recover such an amount, even if evidence and findings were obtained showing that Texas Employers' Insurance Association had notice of the necessity for such medical services and failed to provide them, would permit the plaintiff a double recovery, which is clearly opposed to the intention of the Texas Workmen's Compensation Act.

For the reasons stated, I concur in affirmance of the judgment to the extent hereinbefore stated and I dissent as to the award of medical expenses in the amount of $3,726.75. I would reverse and render judgment in favor of appellant as to the last-stated amount.